DURHAM MANUFACTURING COMPANY ET AL. *v.* HUTCHINS ET AL.

[No. 17,310. Filed January 4, 1945. Rehearing denied January 29, 1945. Transfer denied March 14, 1945.]

*Cooper, Royse, Gambill & Crawford,* of Terre Haute, for appellants.

*George C. Forrey, III, Burrell Wright,* and *Jacob S. White,* all of Indianapolis, for appellees.

DRAPER, C. J.—The appellee Hattie Hutchins, employee, instituted this proceeding against the appellant Durham Manufacturing Company, employer, under the provisions of the Indiana Workmen's Occupational Diseases Act (Acts 1937, ch. 69, § 40-2201, *et seq.* Burns' 1940 Replacement), alleging she had contracted lead poisoning under such circumstances and with such results as to entitle her to relief. During the course of the proceedings the appellees Liberty Mutual Insurance Company and Maryland Casualty Company were made additional parties defendant.

A majority of the Full Board, finding, among other things, that ". . . in the performance of her duties for the defendant employer, Durham Manufacturing Company, the said plaintiff was exposed to and did contract an occupational disease known as lead poisoning. That the date of plaintiff's last exposure to said occupational disease was the 27th day of November, 1942. That the date of plaintiff's disablement as a result of said occupational disease was the 27th day of November, 1942," found for the employee and against the employer and further found that no liability attached to those made additional parties defendant, and the Board entered an award accordingly.

The undisputed evidence shows the employee went to work for the employer in 1935 and worked until November 27, 1942, when, because of her illness, she could work no longer. During the entire period of her

employment she was exposed to deleterious fumes and paint sprays. On September 28, 1940, because of the conditions under which she worked, she was compelled to lay off for three months and three weeks, or until January 20, 1941, when, although still suffering from the disease which had caused that disablement, she returned to work, thereafter working under conditions somewhat better, but still unfavorable. She never completely recovered from the disease which caused her disablement commencing September 28, 1940, her condition then and now being substantially the same. She received no compensation for the time lost. The Liberty Mutual had denied liability and no steps were ever taken by her to enforce payment.

Liberty Mutual was the occupational disease insurance carrier for the employer from some time in 1937 to March 1, 1942; Maryland Casualty was such carrier from March 1, 1942, to November 15, 1942, and appellant Bituminous Casualty was such from October 15, 1942, to and beyond November 27, 1942.

The effect of the award is of course to cast liability upon Bituminous Casualty. The employee is admittedly entitled to an award. The correctness of the Board's determination of liability as between the insurance carriers is the sole question presented. We are therefore called upon to construe § 26 (a) of chapter 69 of the Acts of 1937, being § 40-2226, Burns' 1940 Replacement, the pertinent part of which reads as follows: "The insurance carrier liable shall be the carrier whose policy was in effect covering the employer liable on the last day of the exposure rendering such employer liable, in accordance with the provision of this act."

Two doctors testified the employee had given them a history of disability causing her absence from work

for a short time in September, 1942. Physicians are permitted to testify as to statements made to them by one who makes them for the purpose of securing diagnosis and treatment; not to establish the truth of the statements made, but to show the basis of the doctor's opinion. 31 C. J. S., p. 989, § 241. She testified she was not absent from work in September, 1942, because of physical disablement, and there is no evidence in the record sufficient to show that she was. We therefore consider the case as showing but the one period of disablement prior to November 27, 1942.

Bituminous Casualty bases its claim of nonliability on the proposition that as between successive insurance carriers, the carrier on the risk when the disease is incurred and disablement first appears is liable for recurring disablement from such disease, though it recurs at a later date when another carrier is on the risk, and it insists this case presents that situation.

Under our statute the mere contraction of an occupational disease does not entitle the workman to compensation. The *sine qua non* is disablement. No provision is made for the apportionment of liability between successive insurance carriers. Only one insurer can be liable for the same disability where joint service of two or more employers is not involved.

Liability is not necessarily imposed upon the insurer whose policy is in effect on the last day the employee works for the employer, nor upon the insurer who carried the risk on the last day the employee was exposed to the disease causing disablement. It is imposed upon the insurer on the risk on the last day *of the exposure rendering the employer liable*. The question therefore is, what was the exposure rendering

the employer liable in this case and what was the last day of that exposure? The question is one of fact for the board to determine, and its determination is conclusive if it is supported by any substantial evidence, including reasonable inferences that may be drawn therefrom. *Russell* v. *Johnson* (1943), 220 Ind. 649, 46 N. E. (2d) 219.

If the evidence is such as to force the conclusion that the employee's present disability resulted solely from the exposure prior to and causing the period of disablement commencing September 28, 1940, or, in other words, if the later disablement was a mere recurrence of the previous attack, Bituminous Casualty cannot be liable regardless of the fact that her present disablement occurred while it was on the risk. Thus, had she continued to work for this employer after January 20, 1941, under such circumstances that she was not exposed to the disease, or, though exposed, was not so exposed as to render the employer liable as the result of that exposure under the terms of § 6 of the Act, there could be no question of the correctness of the position taken by Bituminous Casualty. *Liberty Foundries Company* v. *Industrial Trial Comm.* (1940), 373 Ill. 146, 25 N. E. (2d) 790.

The evidence in this case, however, presents a picture of continuous exposure throughout the period of active employment. After laying off on September 28, 1940, when her illness resulted in unconsciousness, she had sufficiently recovered on January 20, 1941, to return to work and thereafter continued to be exposed to the end. The evidence would therefore support the conclusion that the disablement commencing November 27, 1942, was not a mere recurrence of the first, but that the later exposure, commencing on January 20, 1941, and terminating on November 27,

1942, a day when Bituminous Casualty carried the risk, bore a causal connection with the present disability. The Board in effect so found, and Bituminous Casualty must bear the loss.

We are not impressed by the contention that to hold Bituminous Casualty liable in this case achieves an absurd result and unduly penalizes an insurer who has carried a risk but a comparatively short time. The legislature intended that no employee should incur an uninsured risk. If the law of averages will not save an insurer harmless from disproportionate losses, they may of course refuse to write the business.

It is suggested that the finding is insufficient in that, although it fixes the date of last exposure and the date of the employee's disablement, it fails to fix the date of the last exposure rendering the employer liable. The board should fix the latter date in these cases, thus leaving no question as to the identity of the insurer liable, but in this case no such question is left in view of the express finding that the other companies are not liable.

In view of the conclusions reached, it will be unnecessary to discuss other questions raised.

Award affirmed with 5% increase.

NOTE.—Reported in 59 N. E. (2d) 444.