MARTINEZ ET AL. *v.* TAYLOR FORGE & PIPE WORKS

[No. 2-577A188. Filed November 7, 1977. Rehearing denied December 6, 1977. Transfer denied March 7, 1978.]

*Duane W. Hartman, Blachly, Tabor, Bozik & Hartman,* of Valparaiso, for appellants.

*Samuel J. Furlin, Spangler, Jennings, Spangler & Dougherty,* of Gary, for appellee.

ROBERTSON, C.J.—Plaintiffs-appellants appeal from a decision of the full Industrial Board denying their applications for award under the Workmen's Compensation Act[1] and Workmen's Occupa-

1. IC 1971, 22-3-2-1—22-3-6-3 (Burns Code Ed.).

tional Diseases Act.[2]

The facts favorable to the Industrial Board decision show that the appellants were employed as operators of a steam hammer in defendant-appellee's forge shop for periods of five to 20 years. Due to the nature of the work done in the plant, there was a high level of noise. Appellants complain of a permanent partial noise-induced hearing loss which occurred gradually during their lengthy employment. Their claims for compensation followed their employer's cessation of operation in Lake County in August of 1972.

The Board found that appellants did not sustain a hearing loss by reason of an accident arising out of and in the course of their employment within the meaning of the Workmen's Compensation Act, nor did appellants sustain a hearing loss by reason of contracting an occupational disease arising out of and in the course of their employment within the meaning of the Workmen's Occupational Diseases Act.

The issue presented for our review is:

Whether the Industrial Board decision that noise-induced hearing loss in this case was not compensable under either the Workmen's Compensation Act or the Workmen's Occupational Diseases Act was contrary to law.

This court in reviewing a decision of the Industrial Board will only consider that evidence which supports the decision and reasonable inferences therefrom. The court cannot weigh the evidence or determine the credibility of witnesses. On appeal from a negative decision, appellants must show that the decision was contrary to law by showing that the evidence was without conflict, that it would lead to but one conclusion, and that the Industrial Board reached the opposite conclusion. *Ellis v. Hubbell Metals, Inc.* (1977), 174 Ind. App. 86, 366 N.E.2d 207.

In order to qualify for an award under the Workmen's Compensation Act (Act), a claimant must establish an injury or death by

2. IC 1971, 22-3-7-1—22-3-7-38 (Burns Code Ed.).

accident arising out of and in the course of employment. IC 1971, 22-3-2-2, (Burns Code Ed.). "Accident," within the Act, refers to some mishap or untoward event not expected or designed. *Estey Piano Corp. v. Steffen* (1975), 164 Ind. App. 239, 328 N.E.2d 240.

This court in *Ellis v. Hubbell, Inc., supra,* recently examined the theories used by Indiana courts in defining the type of unexpected event which is to be characterized as an "accident." Reasoning that the "unexpected result"[3] theory is more in keeping with the Act which the courts are to liberally construe in favor of the worker, we applied that theory in *Ellis* and do likewise in the case at bar.

Here, the full Industrial Board adopted the parties' stipulation of facts as its findings. Those findings, as set out below, explicitly state that the claimants suffered neither unexpected nor unforeseen hearing loss from their normal work activities:

. . . .

That the plaintiffs knew during all of their employment with defendant that there was a high level of noise at their place of work.

That working over a long period of time and the particular employment of plaintiffs which is involved and described herein, noise-induced hearing losses would be expected, anticipated and foreseen by reasonable and ordinary men, especially if they did not wear adequate protective ear devices.

That approximately ten (10) years prior to the closing of defendant's plant in 1972, plaintiffs began to notice a loss of hearing. That the plaintiffs' loss cannot be traced to any one particular incident or event or incident which occurred during their employment and after which they immediately experienced a loss of hearing, but the loss occurred gradually over a long period of time while plaintiffs performed their usual and routine everyday work tasks, operating the steam hammer in the Forge Shop.

---

3. "Under the *unexpected result* theory an 'accident' may occur where everything preceding the injury was normal, and only the injury itself was unexpected, e.g., where a worker bends over, stoops, turns, lifts something, etc., which activity is part of his everyday work duties, and yet, as in the case at bar, he is unexpectedly injured." 366 N.E.2d at 212.

. . . .

That plaintiffs, as well as other members of the general public, were exposed to noise outside of their place of employment before, during, and after the course of their employment with defendant herein, which noise over a long period of time also produced some noise-induced hearing loss to plaintiffs and the public in general, and plaintiffs would also be subjected to the normal hearing loss due to old age that the general public is subjected to. That the noise to which plaintiffs were exposed at their place of employment during working hours for defendant was much greater than the noise to which they were exposed after their working hours.

. . . .

That nothing extraordinary occurred during plaintiffs' employment with defendant to cause any noise-induced hearing loss. That no untoward or unexpected incident or event occurred during plaintiffs' employment with defendant, and there was no event or happening beyond the nature of the employment itself. That the noise-induced hearing loss to plaintiffs herein would not have been untoward or unexpected to reasonable and ordinary men under same or similar circumstances.

The findings-stipulations speak for themselves.

For this court to hold that an accident arising out of or in the course of employment occurred in this case would stretch the meaning and concept of *accident* to — to use the words of Judge Buchanan, dissenting in *Inland Steel Co. v. Almodovar* (1977), 172 Ind. App. 556, 361 N.E.2d 181, 189, — "the breaking point."[4]

We decline to do so.

We also decline to stretch the meaning of occupational disease to incorporate the type of noise-induced hearing loss suffered here.

In order to qualify for compensation under the Workmen's Occupational Diseases Act, a claimant must establish: (1) that he has suffered an "occupational disease"[5]; and (2) that he has suffered

---

4. We agree with Judge Buchanan's statement in *Inland Steel* that " '[a]ccident' as a word of art in Workmen's Compensation law has become as mysterious as the Loch Ness monster . . . and awaits the attention of the Surpeme Court or the Legislature." 361 N.E.2d at 189.

5. IC 1971, 22-3-7-10 (a): "[T]he term 'occupational disease' means a disease

a "disablement."[6] *See: Durham Mfg. Co. v. Hutchins* (1945), 115 Ind. App. 479, 58 N.E.2d 444; B. Small, Workmen's Compensation in Indiana § 13.4 (1950).

With regard to the first requirement of proof, IC 1971, 22-3-7-10(b) states:

(b)   A disease shall be deemed to arise out of the employment, only if there is apparent to the rational mind, upon consideration of all of the circumstances, a direct causal connection between the conditions under which the work is performed and the occupational disease, and which can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment and which can be fairly traced to the employment as the proximate cause, and which does not come from a hazard to which workmen would have been equally exposed outside of the employment. The disease must be incidental to the character of the business and not independent of the relation of employer and employee. The disease need not have been foreseen or expected but after its contraction it must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a rational consequence.

Appellants have not put forth a convincing argument nor directed us to supporting evidence that their hearing loss should be compensable as occupational disease to which they were exposed as a consequence of their employment. The case law upon which the appellants rely is not applicable to the facts of this case.

We believe, moreover, that even if an inference were to be made, based upon the facts, that the hearing loss here was an occupational disease, it is equally true that the facts support the contrary inference that the hearing loss was not an occupational disease. Again, we observe that in reviewing an Industrial Board

arising out of and in the course of the employment. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident of an occupational disease as defined in this section."

6.   IC 1971, 22-3-7-9: "The term 'disablement' means the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he claims compensation, or equal wages in other suitable employment and 'disability' means the state of being so incapacitated." ·

decision we will consider only that evidence which supports the decision and reasonable inferences therefrom. Based upon the state of the record, we cannot say that the Board erred as a matter of law in finding that appellants did not sustain hearing loss by reason of contracting an "occupational disease" within the purview of the Act.

Notwithstanding appellant's failure to establish the occupational disease element necessary for a recovery under the Act, appellant has also failed to establish a disablement. The parties did stipulate, in part, as follows:

. . . .

That the plaintiffs were not incapable of performing their work and earning their full wages at any time during their employment with defendant due to the noise-induced hearing loss. However, plaintiffs did incur some permanent partial noise-induced hearing loss during the course of their employment with the defendant.

Following the closing of defendant's plant in August of 1972, plaintiffs sought new employment with several companies, but were not able to obtain work until plaintiffs secured employment with the Allis Chalmers Company on March 15, 1973, where they have been steadily working with a drop hammer at comparable wages and where the level of noise is approximately the same as it was when working for defendant herein.

. . . .

That no temporary total disability existed. That the plaintiffs did not incur any statutory medical services.

Finally, we have found no Indiana cases allowing compensation under either of the Acts for noise-induced hearing loss occurring gradually over a period of years. In the absence of action by the Legislature to provide statutory compensation in a situation such as the present, we decline to "legislate" such a remedy. We hold, therefore, that the Industrial Board's decision was not contrary to law.

Affirmed.

Lowedermilk and Lybrook, JJ., concur.

NOTE—Reported at 368 N.E.2d 1176.