**Richard D. BUNKER, Plaintiff-Appellant,**
v.
**NATIONAL GYPSUM COMPANY,**
**Defendant-Appellee.**

No. 2–680A179.

Court of Appeals of Indiana,
Third District.

Sept. 29, 1981.

Rehearing Denied Nov. 30, 1981.

M. Robert Benson, Ronald E. James, Sowers & Benson, Fort Wayne, for plaintiff-appellant.

Edward J. Ohleyer, James L. Petersen, Ice, Miller, Donadio & Ryan, Indianapolis, for defendant-appellee.

GARRARD, Judge.

Richard D. Bunker appeals from a decision of the Industrial Board denying disability benefits under the Occupational Disease Act, IC 22–3–7–1, et seq. The Board rejected his claim on the basis that disablement had not occurred within three years of his last exposure to the hazards of the disease.

The statutory basis for the Board's action is IC 22–3–7–9(f),[1] which states,

"(f) No compensation shall be payable for or on account of any occupational diseases unless disablement, as defined in subsection (e) of this section, occurs within two [2] years after the last day of the last exposure to the hazards of the disease *except in cases of occupational diseases caused by the inhalation of silica dust, coal dust, or asbestos dust and in such cases, within three [3] years after the last day of the last exposure to the hazards of such disease.* However, in all cases of occupational disease caused by the exposure to radiation, no compensation shall be payable unless disablement, as defined in subsection (e) of this section, occurs within two [2] years from the date on which the employee had knowledge of the nature of his occupational disease or, by exercise of reasonable diligence, should have known of the exist-

1. This subsection, formerly designated as "(e), was relettered in 1979.

ence of such disease and its causal relationship to his employment." (Emphasis added)

Bunker was employed by National Gypsum Company in February 1949. He was exposed to asbestos fibers while supervising a blending process for the manufacture of an acoustical treatment product until November 1950. He was then transferred to other work although he remained in National Gypsum's employ until March 31, 1966.

On July 23, 1976, Bunker underwent exploratory surgery and was diagnosed as suffering from asbestosis. He brought this claim in June 1978.

In an appeal from a companion civil action we held that Bunker's exclusive remedy lay under Indiana's Occupational Disease Act. *Bunker v. National Gypsum Co.* (1980), Ind.App., 406 N.E.2d 1239. We also noted that under the language employed in that act no claim or action accrues to an employee unless and until the occupational disease actually causes disablement or death. 406 N.E.2d at 1241.

In view of these holdings we are now asked to consider the constitutional efficacy of the three year requirement already referred to.

At the outset it is appropriate to observe that due process challenges addressed to statutes of limitations are not a favorite of the law. Their success ratio in appellate courts is meager, and properly so. Despite this, the test to be employed when the question is raised can be clearly and simply stated. The leading Indiana decision is *Wright-Bachman Inc. v. Hodnett* (1956), 235 Ind. 307, 133 N.E.2d 713. Writing for a unanimous court Judge Landis observed,

> "We recognize the general rule that the legislature is the primary judge as to whether the time allowed by a statute of limitations is reasonable. Although the determination of the legislature is reviewable by the courts, the courts will not inquire into the wisdom of the legislative

decision in establishing the period of legal bar, unless the time allowed is so short that the statute amounts to a practical denial of the right itself and becomes a denial of justice."

235 Ind. at 323, 133 N.E.2d at 720. *See also Short v. Texaco, Inc.* (1980), Ind., 406 N.E.2d 625; *Toth v. Lenk* (1975), 164 Ind. App. 618, 330 N.E.2d 336.

The question then is whether the statutory limitation is such that it must be considered so unjust or unreasonable as to amount to a denial of justice by effecting a denial of the right of recovery which the legislature sought to confer.

The statute before us arguably concerns three purposes of the legislature.

In dealing with a disease rather than the more typical forms of industrial injury the determination of causation may be a problem.[2] The legislature may have desired to insure there was a reasonable nexus between the alleged cause and the resulting harm. This might be especially true since the act otherwise provides that an employee is to be conclusively deemed to have been exposed to the hazards of a disease when for any length of time, however short, he is employed in an occupation or process in which the hazard of the disease exists. IC 22–3–7–33.

Secondly, the legislature may have been concerned with the traditional attendants of prohibiting stale claims and attempting to assure that material evidence would remain available to the parties in litigation. In this regard, however, it must be observed that the Occupational Disease Act imposes a second limitation period which largely satisfies these purposes. IC 22–3–7–32(c) additionally bars a claim under the act unless the claim is filed within two (2) years after the date of disablement (or death, in the case of claims by dependents).

Thirdly, the statutory scheme contemplates funding disability awards primarily through the use of insurance. *See* IC 22–3–

---

2. *Compare* the Industrial Board's continuing quest for the untoward event in Workmen's Compensation cases. *See, e. g., Calhoun v.*

*Hillenbrand Industries, Inc.* (1978), 269 Ind. 507, 381 N.E.2d 1242 (DeBruler and Hunter, JJ. dissenting).

424

7-33 and 34. Thus, the three year limitation aids the employer and his insurer in the actuarial computation of risks and premiums. This must, however, be considered as a subsidiary goal to the statute's principal purpose of compensating disabled workmen.

The statutory impact is to require an occupational disease claimant to file his claim within three (3) years after his last exposure to the hazards of the disease and within two (2) years after the occurrence of disability. Facially, if the last exposure occurred more than three years from the onset of actual disability, the claimant would be denied recovery because of the decisions holding disability to be a *sine qua non* to a valid claim. *See Durham Mfg. Co. v. Hutchins* (1945), 115 Ind.App. 479, 58 N.E.2d 444; *Hirst v. Chevrolet, Muncie Div. of Gen'l. Motors Corp.* (1941), 110 Ind.App. 22, 33 N.E.2d 773; *see also Hibler v. Globe American Corp.* (1958), 128 Ind.App. 156, 147 N.E.2d 19.

We must consider then the nature of the disease, asbestosis, to which the act applies. The disease has been medically recognized for more than fifty years.[3] (For another published account with supporting authorities see Judge Wisdom's opinion for the court in *Borel v. Fibreboard Paper Products Corporation* (5th Cir. 1973), 493 F.2d 1076, 1083–1085, *cert. den.* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107.) Thus, the initial version of the Indiana act expressly recognized asbestosis and imposed the three-year-from-exposure limitation now denominated IC 22-3-7-9(f). The disease has been characterized as irreversible and monosymptomatic, involving dyspnea, or labored breathing.[4]

Despite this recognition, much remained unknown about the disease and its potential impact on modern urban society until a series of studies were conducted by Dr.

Irving Selikoff and others during the 1960's and 1970's.[5]

From these studies two factors critical to our analysis emerge.

First, once inhaled the asbestos fibers remain *in situ* and while the tissue response to them is indolent, it is progressive and apparently irreversible. As Dr. Selikoff characterizes the medical reaction,

"Thus a workman who has been continually exposed to asbestos for, let us say, twenty-five years carries within him a composite biological effect. The initial burden of inhaled fibers is associated with a twenty-five year effect, those inhaled twenty years before are experiencing a twenty-year effect and so on, the fibers but recently inhaled adding the effect associated with newly deposited material. The clinical resultant is the summation of all these effects.

This analysis explains the reluctance of many physicians to advise asbestos workers with many years of experience but in good health to leave their employment, since their ultimate fate may be determined *not* by their current exposure but by their exposure many years before."

42 Am.J.Med. 491.

Therefore, occurrence and causation are not dependent upon long continued exposure.

Secondly, and most revealingly, Dr. Selikoff discovered that there is a long period of latency during which the body tissue reacts to the presence of asbestos fibers before the disease can be diagnosed. He reports that a study of more than 1100 asbestosis insulation workers revealed chest x-ray abnormality in only 10% of those whose exposure began less than ten (10)

**3.** Cooke, *Fibrosis of the Lungs Due to Inhalation of Asbestos Dust*, 2 Brit.Med.J. 147 (1924).

**4.** Selikoff, et al, Editorial, *Asbestosis and Neoplasia*, 42 Am.J.Med. 487 (1967). A causal relation is also noted between asbestos exposure and mesothelioma, a form of cancer.

**5.** Dr. Selikoff served as Professor of Community Medicine at Mount Sinai School of Medicine

of the City University of New York and Director of its Environmental Health Sciences Center. In addition to the article cited at n. 4, *see* Selikoff and Hammond, *Asbestos-Associated Disease in United States Shipyards*, 28 CA-A Cancer J. Clin. 87 (1978), and Selikoff, Churg and Hammond, *The Occurrence of Asbestosis Among Insulation Workers*, 132 Ann.N.Y.Acad. Sci. 139 (1965).

years before the study and in only 44% of those whose exposure began between 10 and 19 years before. Furthermore, the abnormalities noted were minimal. On the other hand, among those exposed for between 20 and 29 years prior to the study, x-rays showed abnormality in 72% of the workmen, and this figure rose to 90% for those with more than thirty (30) years from the onset of exposure.[6] While it was noted that asbestotic fibrosis is a diffuse interstitial variety that may not be readily apparent on a roentgenogram, there appears no doubt of the long reaction time culminating in the presence of the disease.

■ In view of the discovery of this factual information about the disease since the legislature imposed the three-years-from-exposure limitation in 1937, it appears to us that the statute can no longer stand. To impose its ban is to violate the classic constitutional mandate, because to do so amounts to a practical denial of the very right to recovery that the statute was intended to provide.[7]

We therefore conclude that IC 22–3–7–9(f) is unconstitutional as applied to appellant Bunker and similarly situated workers. The decision of the Industrial Board is reversed and the case is remanded for further proceedings consistent herewith.

Reversed and remanded.

**6.** 42 Am.J.Med. at 488. The following table appeared in 28 CA-A Cancer J. Clin. at 89:

TABLE 2

X-ray changes in asbestos insulation workers

| Onset of exposure (yrs.) | No. | % Normal | % Abnormal | Asbestosis (grade) | | |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 40 + | 121 | 5.8 | 94.2 | 35 | 51 | 28 |
| 30–39 | 194 | 12.9 | 87.1 | 102 | 49 | 18 |
| 20–29 | 77 | 27.2 | 72.8 | 35 | 17 | 4 |
| 10–19 | 379 | 55.9 | 44.1 | 158 | 9 | 0 |
| 0–9 | 346 | 89.6 | 10.4 | 36 | 0 | 0 |
| Total | 1,117 | 51.5 | 48.5 | 366 | 126 | 50 |

STATON, J., concurs.

HOFFMAN, P. J., dissents and files separate opinion.

HOFFMAN, Presiding Judge, dissenting.

I respectfully dissent.

IC 1971, 22–3–7–9(f) (formerly (e)) (1980 Burns Supp.) clearly states:

"(f) No compensation shall be payable for or on account of any occupational diseases unless disablement, as defined in subsection (e) of this section, occurs within two [2] years after the last day of the last exposure to the hazards of the disease *except in cases of occupational diseases caused by the inhalation of silica dust, coal dust, or asbestos dust and in such cases, within three [3] years after the last day of the last exposure to the hazards of such disease.* However, in all cases of occupational disease caused by the exposure to radiation, no compensation shall be payable unless disablement, as defined in subsection (e) of this section, occurs within [2] years from the date on which the employee had knowledge of the nature of his occupational disease or, by exercise of reasonable diligence, should have known of the existence of such disease and its causal relationship to his employment." (Emphasis added.)

The law in Indiana is well settled that statutes of limitation are determinations

**7.** Nor could it be rationally urged that the legislature intended to divide exposed workers for purposes of coverage into those continually exposed for the necessary 20 to 30 year gestation period and those not. In addition to failing the privileges and immunities test under Art. 1, Sec. 23 of the Indiana Constitution as set forth in *Wright-Bachman, supra*, 235 Ind. at 307, 133 N.E.2d at 719, the act, itself, rebuts any such notion by expressing a conclusive presumption that any exposure is sufficient. IC 22–3–7–33.

which are within the province of the Legislature. The court cannot overrule that decision made by the Legislature unless the period of time allowed is unreasonable. *Short v. Texaco, Inc.* (1980), Ind., 406 N.E.2d 625. *See also, Wright-Bachman, Inc. v. Hodnett, et al.* (1956), 235 Ind. 307, 133 N.E.2d 713.

The statute of limitation in question is not unreasonable in that it in effect does not deny the right of recovery which the Legislature sought to confer. *Wright-Bachman, supra.* The Legislature was aware of the problems caused by asbestos as evidenced by the inclusion of a specific provision regarding asbestos in the statute it enacted.[1] With this in mind, it added an additional year to the time period for limitation of actions for a certain category of occupational diseases including those caused by inhalation of asbestos dust.

The general purpose of a statute of limitations is to encourage prompt resolution of claims. *Johnson v. St. Vincent Hospital, Inc.* (1980), Ind., 404 N.E.2d 585. Bunker was last exposed to asbestos fibers in November of 1950. Yet his claim was not brought until June of 1978. Clearly in enacting a provision for a 3-year limitation it cannot be seriously argued that the Legislature really meant to cover a period of 28 years.

A statute is presumed to be constitutional and is entitled to every reasonable presumption supporting its validity. *Johnson, supra.* Bunker has not overcome the heavy burden necessary to prove this statute unconstitutional.

IC 1971, 22–3–7–9(f) clearly states the wishes of the Legislature. It is neither unreasonable nor unconstitutional. Therefore, this Court and the Industrial Board have no choice but to defer to those wishes expressed by the Legislature. Any change in the statute is for the Legislature to make.

The decision of the Industrial Board should be affirmed.

1. As the majority points out on page 5 of their opinion, asbestosis has been medically recognized for more than 50 years.