Richard D. BUNKER, Appellant,

v.

NATIONAL GYPSUM COMPANY, Appellee.

No. 1082S403.

Supreme Court of Indiana.

Oct. 26, 1982.

M. Robert Benson, Ronald E. James, Sowers & Benson, Fort Wayne, for appellant.

Geoffrey Segar, Edward J. Ohleyer, James L. Petersen, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee.

Michael A. Bergin, Locke, Reynolds, Boyd & Weisell, Indianapolis, for amicus curiae The Indiana Legal Foundation.

PIVARNIK, Justice.

This cause comes to us on a Petition for Transfer from the Third District Court of Appeals. Plaintiff-Appellant-Respondent, Richard D. Bunker, discovered in July, 1976, that he was afflicted with asbestosis. On June 17, 1978, he applied to the Industrial Board of Indiana for disability benefits under the "Indiana Workmen's Occupational Diseases Act." He alleged that his permanent disability was due to his work-related exposure to asbestos dust. The Industrial Board held that Respondent's claim was barred by the statute of limitations provision of the Occupational Diseases Act. Specifically, the Board found that Respondent's disability had not arisen within three years of the date of his last job-related exposure and therefore was not compensable. On appeal, two of the three judges for the Third District found the statute of limitations unconstitutional and reversed the Industrial Board. Defendant-Appellee-Petitioner, the National Gypsum Company, subsequently brought this Petition for Transfer. We find the Court of Appeals in error and accordingly vacate their opinion and affirm the Industrial Board.

The material facts in this case are not in dispute. They show that Mr. Bunker was first employed by the National Gypsum Company in February, 1949. From that time until November, 1950, he was regular-

ly exposed to asbestos fibers while supervising a blending process for the manufacture of an accoustical treatment product. In November, 1950, he was permanently transferred to other work not involving asbestos. Mr. Bunker voluntarily left National Gypsum's employ in March, 1966. In July, 1976, Mr. Bunker underwent exploratory surgery and was diagnosed as suffering from asbestosis.

In Respondent's appeal of a companion action sounding in negligence, the Third District held that Respondent's exclusive remedy lay under Indiana's Occupational Diseases Act. *Bunker v. National Gypsum Co.*, (1980) Ind.App., 406 N.E.2d 1239, 1241. The Court of Appeals also noted that no benefit claim can accrue unless and until an occupational disease actually causes disablement or death. *Id.* In adjudging Respondent's instant action under the Occupational Diseases Act, the Third District found that the Act's three year statute of limitations represents a violation of Respondent's constitutional right to due process and therefore must be nullified. That Court held:

"In view of the discovery of this factual information about the disease since the legislature imposed the three-years-from-exposure limitation in 1937, it appears to us that the statute can no longer stand. To impose its ban is to violate the classic constitutional mandate, because to do so amounts to a practical denial of the very right to recovery that the statute was intended to provide."

*Bunker v. National Gypsum Co.*, (1981) Ind. App., 426 N.E.2d 422, 425.

The section of the "Indiana Workmen's Occupational Diseases Act" at issue is Ind. Code § 22–3–7–9(e) (Burns 1974):

"(e) *No compensation* shall be payable for or on account of any occupational diseases *unless disablement,* as herein defined, appears within two [2] years after the last day of the last exposure to the hazards of the disease except in cases of occupational diseases caused by the inhalation of silica dust or asbestos dust and in such cases, *within three [3] years after the last day of the last exposure* to the hazards of such disease: Provided, That in all cases of occupational disease caused by the exposure to radiation, no compensation shall be payable unless disablement, as herein defined, occurs within two [2] years from the date in which the employee had knowledge of the nature of his occupational disease or, by exercise of reasonable diligence, should have known of the existence of such disease and its causal relationship to his employment." (emphasis added).

Ind.Code § 22–3–7–9(e) (Burns 1974) provides that compensation will be payable for a disability resulting from an exposure to asbestos only if the disability arises within three years of the *date of last exposure.* This legislation is very explicit. For example, the statute distinguishes asbestos-related disabilities from disabilities due to occupational disease caused by radiation exposure. In radiation cases, compensation is payable only if disability occurs within two years of the *date on which the employee discovers* or reasonably should have discovered his disease and its relationship to his employment.

Since the undisputed facts before the Industrial Board show that Respondent's last job-related exposure to asbestos dust was in November, 1950, the statute of limitation in this case began to run at that time. The facts also show that Respondent discovered his disability in July, 1976, leading us to the conclusion that his disability arose approximately twenty-three years after the deadline dictated by the Occupational Diseases Act. The facts clearly indicate, therefore, that Respondent's asbestos-related disability arose after the expiration of the statutory period within which all asbestos-related disability claims must have been brought.

Respondent seeks to avoid the direct application of the three year limitation period and to circumvent a foreclosure of his claim by arguing that "it would abridge his constitutional right to a remedy to say that the time for claiming the remedy had passed even before it accrued." He offers this due process argument as a reason for finding the limitation provision unconstitutional.

The Court of Appeals essentially adopted Respondent's argument. In so doing, they took it upon themselves to independently consider and evaluate the nature of asbestosis. The Court of Appeals introduced medical evidence suggesting that the occurrence and causation of asbestosis is not dependent upon a long continued exposure to asbestos. Other evidence was presented, however, which clearly indicates a direct correlation between the number of years of exposure to asbestos and the incidence of asbestosis. They also reported that after a person is exposed to asbestos, there is a long period of latency before asbestosis can be diagnosed. Based upon these findings, the Court of Appeals deemed Respondent entitled to protection under the Occupational Diseases Act.

We now find that the Court of Appeals must be reversed because they erred in the following two respects:

1. they erred by finding the statute of limitations imposed by the Occupational Diseases Act to be unconstitutional; and
2. they erred by using medical evidence found outside the record of this case to justify their opinion.

I

Our duty in construing an Indiana statute is to give effect to the intention of our legislature. This is because the Indiana Constitution explicitly vests in the General Assembly the exclusive power to legislate. Ind.Const. art. 4, § 1. This Court has repeatedly warned that the judiciary must not usurp the constitutional function of the legislature. We have held:

"A statute is not unconstitutional simply because the court might consider it born of unwise, undesirable or ineffectual policies."

*Johnson v. St. Vincent Hospital,* (1980) Ind., 404 N.E.2d 585, 591. This Court and the Court of Appeals must not, therefore, substitute judicial judgment for legislative judgment in legislative matters that neither affect fundamental rights nor proceed along suspect lines. *Short v. Texaco, Inc.,* (1980) Ind., 406 N.E.2d 625, 632, *aff'd,* 454

U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982); *see also: Indiana Aeronautics Commission v. Ambassadair, Inc.,* (1977) 267 Ind. 137, 147, 368 N.E.2d 1340, 1346, *cert. denied,* 436 U.S. 905, 98 S.Ct. 2235, 56 L.Ed.2d 403 (1978). Further, an act of the legislature must be afforded a presumption of constitutionality. Accordingly, the burden to rebut this presumption is upon any challenger and all reasonable doubts must be resolved in favor of an act's constitutionality. *Dague v. Piper Aircraft Corp.,* (1981) Ind., 418 N.E.2d 207, 214, *reh. denied.* These are well established rules. This Court has repeated and elaborated upon these rules in *Sidle v. Majors,* (1976) 264 Ind. 206, 208, 341 N.E.2d 763, 766, *reh. denied,* as follows:

"In approaching a consideration of the constitutionality of a statute, we must at all times exercise self restraint. Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own. That we have the last word only renders such restraint the more compelling. We, therefore, remind ourselves that in our role as guardian of the constitution, we are nevertheless a court and not a 'supreme legislature.' *We have no right to substitute our convictions as to the desirability or wisdom of legislation for those of our elected representatives.* We are under a constitutional mandate to limit the General Assembly to its lawful territory of prohibiting legislation which, although enacted under the claim of a valid exercise of police power, is unreasonable and oppressive. Nevertheless, we recognize that the Legislature is vested with a wide latitude of discretion in determining public policy. Therefore, *every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary. In the deliberative process, the burden is upon the challenger to overcome such presumption, and all doubts are resolved against his charge.*" (Emphasis added.)

*See also: Shettle v. McCarthy,* (1981) Ind., 423 N.E.2d 594, 597; *Dept. of Financial*

*Institutions v. Holt,* (1952) 231 Ind. 293, 300, 108 N.E.2d 629, 633. In short, while appellate courts may review the power of the legislature to act, they must not evaluate the policies adopted by the legislature.

 As with other legislation, legislative statutes of limitations carry a general presumption of constitutionality. We have previously noted:

"Formerly, statutes of limitations were looked upon with disfavor in that they are invariably in derogation of the common law. 'Now, however, the judicial attitude is in favor of statutes of limitations, rather than otherwise, since they are considered as statutes of repose and as affording security against stale claims. Consequently, except in the case of statutes of limitations against the government, the courts are inclined to construe limitation laws liberally, so as to effect the intention of the legislature.' 51 Am. Jur.2d, Limitation of Actions § 50, (1970). Such statutes rest upon sound public policy and tend to the peace and welfare of society and are deemed wholesome. *Horvath v. Davidson,* (1970) 148 Ind.App. 203, 264 N.E.2d 328; *Sherfey v. City of Brazil,* (1938) 213 Ind. 493, 13 N.E.2d 568; *High et al. v. Board of Commissioners of Shelby County,* (1883) 92 Ind. 580, 589."

*Shideler v. Dwyer,* (1981) Ind., 417 N.E.2d 281, 283. A statute of limitations will comport with the constitutional demand for due process so long as it provides a reasonable time for the bringing of an action. *Ochoa v. Hernandez y Morales,* (1913) 230 U.S. 139, 161, 33 S.Ct. 1033, 1042, 57 L.Ed. 1427, 1438; *Guthrie v. Wilson,* (1959) 240 Ind. 188, 194, 162 N.E.2d 79, 81. In *Guthrie,* we quoted from *Sansberry v. Hughes,* (1910) 174 Ind. 638, 640, 92 N.E. 783, 784, as follows:

"In respect to substantive rights, conferred by law, or acquired by contract, there is no doubt of constitutional protection without modification or change. It is otherwise with a mere remedy. A remedy is nothing more than the means provided by law for the enforcement of rights, and is not of itself a right, except that when there exists but a single remedy for the enforcement of a vested right, such remedy cannot be wholly taken away, without providing some other reasonably convenient and efficient means of enforcement, without violating the Constitution, since a withdrawal of all legal means for the enforcement of a right is equivalent to a subversion of the right itself. But as pertaining to a mere remedy, there exists no doubt of legislative power to make such changes therein as to it seems fit, if in so doing it preserves or provides a reasonable means and opportunity for full enjoyment of the right. *Pritchard v. Spencer* (1851), 2 Ind. 486; *Board, etc. v. Center Tp.* (1896), 143 Ind. 391, 403, 42 N.E. 808; *Kepler v. Rinehart* (1904), 162 Ind. 504, 70 N.E. 806; Cooley, Const.Lim. (6th ed.) 346."

The legislature has the sole duty and responsibility to determine what constitutes a reasonable time for the bringing of an action unless the period allowed is so manifestly insufficient that it represents a denial of justice. *Wilson v. Iseminger,* (1902) 185 U.S. 55, 63, 22 S.Ct. 573, 576, 46 L.Ed. 804, 808; *see also: Antoni v. Greenhow,* (1883) 107 U.S. 769, 775, 2 S.Ct. 91, 96, 27 L.Ed. 468, 471.

This Court has previously upheld the authority of the legislature to alter a statutory, pecuniary right by the adoption of a statutory period of limitation shortening the time within which a claim can be brought. In *Wright-Bachman, Inc. v. Hodnett,* (1956) 235 Ind. 307, 133 N.E.2d 713, a constitutional challenge was made to the statute of limitations in Indiana's Workmen's Compensation Act. Affirming the validity of that limitation, this Court held:

"We recognize the general rule that the legislature is the primary judge as to whether the time allowed by a statute of limitations is reasonable. Although the determination of the legislature is reviewable by the courts, the courts will not inquire into the wisdom of the legislative decision in establishing the period of legal bar, unless the time allowed is so short that the statute amounts to a practical

denial of the right itself and becomes a denial of justice."

*Id.,* 235 Ind. at 323, 133 N.E.2d at 720.

The Court of Appeals has contravened settled case law in finding the statute of limitations of the Occupational Diseases Act unconstitutional. This same issue was decided by the Appellate Court in 1958. *Woldridge v. Ball Brothers Co., Inc.,* (1958) 129 Ind.App. 420, 150 N.E.2d 911, *trans. denied.* In *Woldridge,* the claimant sought to be awarded benefits for his total and permanent disability due to his work-related exposure to silica dust. The full Industrial Board found that the claimant had not been exposed to silica dust during the last three years of his employment and that his disablement had not occurred within three years of his last silica exposure. Accordingly, the Appellate Court denied the claim pursuant to the same statute of limitations now at issue.

This Court has previously decided upon the constitutionality of the time limitations incorporated into Indiana's Malpractice Act, Ind.Code §§ 16–9.5–1–1 through 16–9.5–10–5 (Burns Supp. 1982). In *Johnson v. St. Vincent Hospital, Inc.,* 404 N.E.2d at 603, appellant argued that the special time limitation and legal disability provision of the Malpractice Act was contrary to his rights to due process and equal protection of the law. The challenged provision of the Act was:

> "No claim, whether in contract or tort, may be brought against a health care provider based upon professional services or health care rendered or which should have been rendered unless filed within two [2] years from the date of the alleged act, omission, or neglect except that a minor under the full age of six [6] years shall have until his eighth birthday in which to file. This section applies to all persons regardless of minority or other legal disability." Ind.Code § 16–9.5–3–1 (Burns Supp. 1982).

This provision shortened the general limitation period on actions of this type. In upholding the constitutionality of this statute of limitations, we held:

> "The general purpose of a statute of limitation is to encourage prompt presentation of claims. *United States v. Kubrick,* (1979) 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259. When any alleged tortfeasor is required to defend a claim long after the alleged wrong has occurred, the ability to successfully do so is diminished by reason of dimmed memories, the death of witnesses, and lost documents. As the years between injury and suit increase, so does the probability that the search for truth at trial will be impeded and contorted to the benefit of the plaintiff. \* \*
>
> In considering this challenge we regard the traditional test of constitutionality to be applicable and that considerable deference should be accorded the manner in which the Legislature has balanced the competing interests involved. *Chaffin v. Nicosia,* [(1974) 261 Ind. 698, 310 N.E.2d 867]."

*Johnson v. St. Vincent Hospital, Inc.,* 404 N.E.2d at 604. *See also: Rohrabaugh v. Wagoner,* (1981) Ind., 413 N.E.2d 891, *reh. denied.*

■ In the case at bar, Respondent alleges and the Court of Appeals has held that the statute of limitations in Indiana's Occupational Diseases Act is unconstitutional. In questioning the wisdom of the legislature, the Court of Appeals has in effect rewritten this law thereby usurping the legislature's constitutionally mandated function. If we were to affirm the Court of Appeals in their decision, the legislative intent to provide a definitive time period within which all occupational disease claims must be brought would be frustrated. Specifically, Ind.Code § 22–3–7–9(e) would be meaningless because all disabilities caused by a work-related disease would be compensable under the Act. In addition, the statutory scheme providing for the application of a "discovery" rule only in radiation exposure cases would be subverted. We will not allow such a blatant abuse of judicial power. We have previously found constitutional a statute similar to the instant one. *See generally: Rohrabaugh, supra; Johnson,*

*supra.* We now find the statute of limitations provision of the Occupational Diseases Act to be constitutional in all respects.

## II

■ The Court of Appeals cited medical evidence on which it based its conclusion that the period of limitations in the Occupational Diseases Act is of such relatively short duration as to be a denial of the constitutional right to due process. We find that the Third District erred by its use of this evidence. First, we question whether the conclusions of the Court of Appeals can even be reached by an analysis of the medical authorities they relied on. The cited treatises deal with the relationship between the onset of asbestosis and the length of time one was previously exposed to asbestos. The findings purport that the incidence of asbestosis is drastically increased the longer one is exposed to asbestos. Apparently the converse is also true and a short period of exposure should result in minimal, if any, damage. The facts in this case show that Respondent was exposed to asbestos for only about twenty-two months, a relatively short period of time. Accordingly, a legislator standing in the past may have reasonably concluded that Respondent would probably never be afflicted by asbestosis and therefore would probably never be in need of protection or relief. Second, all of the medical materials used by the Court of Appeals were found outside of the record. Scant medical evidence was presented to the Industrial Board and none comparable to that found in the Court of Appeal's opinion appears in the record of this case. We have recently held:

> "It is likewise axiomatic that appellate review of the factfinder's assessment is limited to those matters contained in the record which were presented to and considered by the fact-finder."

*Hales & Hunter Co. v. Norfolk & W. Ry. Co.,* (1981) Ind., 428 N.E.2d 1225, 1227. It was, therefore, improper for the Court of Appeals to consider this evidence in arriving at its opinion.

It is within the duties and responsibilities of the legislature to keep itself advised of the general progress of medical learning and to make the determination as to whether or not new or revised legislation is needed. Not only being so charged, the legislature is also best equipped to make this determination. A cursory examination of the legislative history of the Indiana Occupational Diseases Act shows that since its inception in 1937, the legislature has on several occasions updated the Act through amendment. In fact, the proviso which relates to occupational disabilities caused by radiation exposure was added in 1961. Again in 1974 when disabilities due to coal dust inhalation were made subject to the three year limitation period, the General Assembly indicated that it was aware of its need to review and revise the Occupational Diseases Act. If this statute requires further updating through amendment, it remains the duty and responsibility of the legislature to do so. There are no grounds for finding any constitutional infirmity in the present form of this statute.

Transfer is hereby granted. The opinion of the Court of Appeals is reversed and vacated, and the award of the Industrial Board is affirmed.

GIVAN, C.J., and DeBRULER and PRENTICE, JJ., concur.

HUNTER, J., dissents with opinion.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority's disposition of National Gypsum Company's petition to transfer, wherein that company sought review of the Court of Appeals' opinion found at *Bunker v. National Gypsum Co.,* (1981) Ind.App., 426 N.E.2d 422 (Hoffman, P.J., dissenting). In the context and posture of the case before us, it is not appropriate for this Court to rule on the constitutionality of the three-year statute of limitations imposed on claims for asbestos-related disablement. In reaching that question and finding the statutory limitation "constitutional in all respects," the majority has ignored the doc-

trine of judicial restraint in circumstances which exemplify the wisdom of that venerable principle. The majority's broad ruling is both advisory in nature and *obiter dictum* in effect.

The doctrine of judicial self-restraint is a quintessential concept in American jurisprudence—one rooted in the landmark decision of *Marbury v. Madison*, (1803) 5 U.S. (1 Cranch) 137, 2 L.Ed. 60. In short, the doctrine precludes gratuitous judicial review of constitutional questions, thereby perpetuating the delicate principles of "checks and balances" and "separation of powers" which are fundamental to our constitutional system of government. *Id.; see also, Rescue Army v. Municipal Court,* (1947) 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666.

The case law of this jurisdiction reflects its long-standing adherence to the doctrine. Typical of our precedent is *Indiana Ed. Employment Bd. v. Benton Community Sch.,* (1977) 266 Ind. 491, 365 N.E.2d 752, where Justice Prentice explained the basic concept of the doctrine:

> "It is true, as argued by Intervenor that courts do not pass on the constitutionality of a statute until a constitutional determination is necessarily and directly involved in a justiciable controversy and is essential to the protection of the rights of the parties concerned. *Bush v. Texas,* (1963) 372 U.S. 586, 83 S.Ct. 922, 9 L.Ed.2d 958; *Roth v. Local Union No. 1460 of Retail Clerks Union,* (1939) 216 Ind. 363, 24 N.E.2d 280. A constitutional question will not be anticipated in advance of the necessity of deciding the constitutional issue. *Poer, Trustee v. State, ex rel.,* (1918) 188 Ind. 55, 121 N.E. 83; *N.Y. Cent. R.R. Co. v. Pub. Ser. Comm. of Ind.,* (1958) 237 Ind. 544, 147 N.E.2d 547." *Id.,* 266 Ind. at 495–6, 365 N.E.2d at 754.

Justice DeBruler elaborated on the fundamental nature of the doctrine in *Board of Commissioners of Howard Co. v. Kokomo City Plan Comm.,* (1975) 263 Ind. 282, 287–8, 330 N.E.2d 92, 96:

> "Without essential legal argument and factual matter, the court, particularly in

a civil case, is justified in refusing to adjudge whether the statute complies with the commands of the constitutions, for in such case it does not 'appear from the record that there is a substantial foundation for the allegation.' *Ex Parte Sweeney,* (1890) 126 Ind. 583, 587, 27 N.E. 127; *Stout v. Hendricks,* 228 F.Supp. 568 (S.D.Ind.1964). In the ordinary case, the party will carry this burden by formally requesting the court to consider relevant facts of which the court may take judicial notice. *State v. Griffin,* (1948) 226 Ind. 279, 79 N.E.2d 537. If the court may not take judicial notice of the necessary factual determinations, such facts must be presented and fully developed in a suitable adversary atmosphere. *Whitcomb v. Chavis,* (1971) 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363; *Tinder v. Clarke Auto Co.,* (1958) 238 Ind. 302, 149 N.E.2d 808; *Hardin v. State,* (1970) 254 Ind. 56, 257 N.E.2d 671; Note, *Admission of Extrinsic Evidence in Cases Involving the Validity of Statutes and Ordinances in Indiana,* 35 Ind.L.J. 100 (1959). Even if the quality of the litigation is sufficient to support a constitutional determination, such determination will not be made if the case can be disposed of justly on non-constitutional grounds. *Passwater v. Winn,* (1967) 248 Ind. 404, 229 N.E.2d 622; *State ex rel. Codding v. Eby, Judge,* (1944) 223 Ind. 302, 60 N.E.2d 527; *Roth v. Local Union # 1460 of Retail Clerks Union,* (1939) 216 Ind. 363, 24 N.E.2d 280."

Here, Bunker's claim for compensation "can be disposed of justly on nonconstitutional grounds." *Id.* The majority has erred by instead addressing the constitutional question, even though we lack the full presentation and development of necessary facts which we properly deemed vital in *Board of Commissioners of Howard Co. v. Kokomo Plan Comm., supra.*

The nonconstitutional grounds upon which this Court should have disposed of this case are readily apparent in the record; there, it is revealed that claimant Bunker was not "disabled" at the time of the hearing and therefore was not eligible for bene-

fits under the Occupational Diseases Act. Ind.Code § 22–3–7–1 *et seq.* (Burns 1974). To be sure, the record reveals that Bunker suffered from asbestosis, an often fatal lung disease.

As has been recognized, however, health insurance is not among the humanitarian purposes of the Act. The fact that a Hoosier worker contracts an occupational disease does not trigger the availability of benefits. "The *sine qua non* is disablement." *Durham Mfg. Co. et al. v. Hutchins,* (1945) 115 Ind.App. 479, 483, 58 N.E.2d 444, 446; *accord, Martinez v. Taylor Forge and Pipe Works,* (1977) 174 Ind.App. 514, 368 N.E.2d 1176.

"Disablement," as is necessary to trigger the recovery of benefits, is defined in subsection "e" of Ind.Code § 22–3–7–9 (Burns 1982 Supp.):

"(e) The term 'disablement' means the event of becoming disabled from earning full wages at the work in which the employee was engaged when last exposed to the hazards of the occupational disease by the employer from whom he claims compensation, or equal wages in other suitable employment and 'disability' means the state of being so incapacitated."

The cross-examination of claimant Bunker by counsel for National Gypsum Company was directed solely to the question whether he was "disabled" within the meaning of the Act. That cross-examination, which follows in its entirety, reveals that Bunker was not disabled:

CROSS EXAMINATION
QUESTIONS BY MR. OHLEYER:

Q. "Mr. Bunker, you terminated your employment with National Gypsum on March 31, 1966?"

A. "Yes."

Q. "How old are you now, sir?"

A. "Fifty-five (55)."

Q. "Have you been employed since March 31, 1966?"

A. "Yes, with Grain Processing Corporation."

Q. "I'm sorry, what's the name of the company?"

A. "Grain Processing Corporation."

Q. "And where are they located?"

A. "Muscatine, Iowa."

Q. "And when did you go to work for them?"

A. "May 1st or something or other."

Q. "Shortly after—"

A. "Yes, right from the one job to the other."

Q. "How did your termination at National Gypsum come about, did you voluntarily quit?"

A. "Yes."

Q. "For better employment at Grain Processing?"

A. "Yes, true."

Q. "And what type of work do you do at Grain Processing?"

A. "I'm a technical salesman."

Q. "And you are still working there today?"

A. "Yes."

MR. OHLEYER: "I have no further questions."

Although suffering from asbestosis, Bunker obviously was not disabled from "earning full wages" equal to those he enjoyed at National Gypsum Company. He continued to work as a technical salesman for Grain Processing Corporation, the same "better employment" which had prompted him to voluntarily leave National Gypsum's employ thirteen years earlier. Not surprisingly, the record reveals that one basis for National Gypsum Company's motion to dismiss was Bunker's lack of disablement.

The majority ignores the availability of this alternative disposition and instead focuses on the constitutionality of the three-year limitations period imposed on claims for asbestos-related disablement. Even if it could be said that Bunker's lack of disablement is not an appropriate basis on which to resolve his claim, it yet remains that the facts relevant to the constitutional question have not been "presented and fully developed in a suitable adversary atmosphere," as emphasized in *Board of Commissioners*

*of Howard Co. v. Kokomo City Plan Comm., supra.*

That dearth of evidence is not the fault of the parties. Rather, it is the product of our own case precedent.

In *Wilson v. Review Board of Ind. Emp. Sec. Div.,* (1979) 270 Ind. 302, 385 N.E.2d 438, this Court recognized that the exhaustion of administrative remedies is not a prerequisite to obtaining judicial review of a constitutional question. Justice Pivarnik explained:

"In the present case, the question presented is of constitutional character. With all due respect, we think that the resolution of such a purely legal issue is beyond the expertise of the Division's administrative channels and is thus a subject more appropriate for judicial consideration.

"In sum, we hold that given the constitutional character of the issue presented by Wilson's complaint, it was not necessary for her to press the issue through administrative channels as a precondition to judicial review. We therefore conclude that the trial court had jurisdiction over this matter and erred by dismissing Wilson's complaint." *Id.,* 270 Ind. at 305, 385 N.E.2d at 441.

Our statements in *Wilson* are mirrored in rulings of the United States Supreme Court. *Califano v. Sanders* (1977) 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192, 201–2 ("Constitutional questions obviously are unsuited to resolution in administrative hearing procedures ..."); *Public Utilities Commission v. United States,* (1958) 355 U.S. 534, 539, 78 S.Ct. 446, 450, 2 L.Ed.2d 470, 475 ("That issue is a constitutional one that the Commission can hardly be expected to entertain").

This Court can hardly decry the "scant medical evidence" relative to the constitutional question when the parties no doubt approached the hearing with the understanding that the constitutional question was not at issue before the Industrial Board. It should be noted that our decision in *Wilson* was handed down only eight months prior to the hearing in the instant case. Bunker certainly was entitled to rely on *Wilson* and envision a court challenge to the constitutionality of the statute following the Board's ruling on his claim as necessary to render the constitutional issue ripe for review.

The record reveals that Bunker's claim was predicated solely on the argument that because the asbestos fibers remained *in situ* within his lungs his "exposure" to the asbestos was a continuing one which brought his claim within the statute of limitations. The evidence presented at the hearing was directed toward that contention.

Consequently, the one-half inch thick record before us is void of the development and presentation of facts which, in *Board of Commissioners of Howard Co. v. Kokomo City Plan Comm., supra,* this Court deemed vital to our resolution of constitutional issues. Although the majority finds it appropriate to reach the constitutional question, its analysis reflects a lack of the direction which is provided by a complete presentation of relevant facts in an adversarial posture. The majority focuses its evidentiary analysis primarily on the relationship between the incidence of asbestosis and the duration and amount of exposure. That is not at issue here. If a worker is disabled by reason of a job-related exposure to asbestos, he has an exclusive remedy in the recovery of benefits under the Occupational Diseases Act.

The subject matter is the *statute of limitations* which governs the exclusive remedy—assuming disablement occurs. Medical authorities relied on by our Court of Appeals established that very rarely does asbestosis manifest itself within three years of exposure; rather, the asbestos fibers remain within the lungs and the tissue response, although indolent, is both progressive and irreversible. The Court of Appeals based its conclusion that the statutory period was unconstitutional on this latency period between exposure to asbestos and its adverse physical manifestations and ultimate disablement of the worker. The Court of Appeals reasoned that the statute of limitations was invalid due to the normal latency period:

"In view of the discovery of this factual information about the disease since the legislature imposed the three-year-from-exposure limitation in 1937, it appears to us that the statute can no longer stand. To impose its ban is to violate the classic constitutional mandate, because to do so amounts to a practical denial of the very right to recovery that the statute was intended to provide.

"We therefore conclude that IC 22–3–7–9(f) is unconstitutional as applied to appellant Bunker and similarly situated workers." *Bunker v. National Gypsum Co., supra,* 426 N.E.2d at 425 [footnote omitted].

In other words, within three years after an exposure to asbestos, no manifestation of the disease, let alone disablement, would be present to justify the claim. After three years, when the manifestations and disablement normally occurs, the statute of limitations would bar the claim. Ultimately, the worker's only hope to exercise his exclusive remedy would lie in continuing the exposure to asbestos until a date within three years of his ultimate disablement. That "Catch-22" predicament for the would-be claimant not only would defy due process and the privileges and immunities guaranteed our citizens—it would be an affront to an Act which is characterized as humanitarian in purpose. *Harbison-Walker Refractories Co. v. Turk,* (1942) 110 Ind.App. 563, 39 N.E.2d 791.

Assuming the Court of Appeals improperly relied on the medical evidence and conclusions contained in the professional journals, it yet remains that the evidence and conclusions and the treatises and journals all exist. Other jurisdictions have relied on these studies, examined the evidence and conclusions therein, and reached decisions in accord with the Court of Appeals. *See, e.g., Borel v. FibreBoard Paper Products,* (5th

Cir. 1973) 493 F.2d 1076; *Insurance Co. of North America v. Forty-Eight Insulations, Inc.,* (E.D.Mich.1978) 451 F.Supp. 1230; *Louisville Trust Co. v. Johns-Manville Products Corp.,* (Ky.1979) 580 S.W.2d 497, *overruling Columbus Mining Co. v. Walker,* (Ky. 1954) 271 S.W.2d 276; *Harig v. Johns-Manville Products Corp.,* (1978) 284 Md.App. 70, 394 A.2d 299, 1 A.L.R. 4th 105; *cf. Urie v. Thompson,* (1949) 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (latent disease silicosis). *See generally,* Note, *The Causation Problem in Asbestos Litigation: Is There an Alternative Theory of Liability?* 15 Ind.L.Rev. 679 (1982).

Because the constitutional question is an arguable one of such significant import for victims of asbestos exposure, this Court should have exercised the doctrine of judicial self-restraint instead of broadly declaring the "statute of limitations provision of the Occupational Diseases Act to be constitutional in all respects." [1] *Majority Opinion, supra.* Before us is "scant medical evidence," as the majority characterizes it; that evidence does not concern the constitutional question decided by the majority. Inasmuch as this Court has not considered any medical evidence concerning the latency of asbestosis, its broad ruling must be regarded as *obiter dictum.* Any other construction of its effect would lead the doctrine of *stare decisis* beyond its bounds.

For all the foregoing reasons, I dissent. Consistent with the doctrine of judicial self-restraint, as embodied in *Board of Commissioners of Howard Co. v. Kokomo City Plan Comm., supra,* this Court should have refused to address the constitutionality of the statute of limitations imposed on asbestos-related claims. If the question must be addressed in the context of this case, Bunker should be provided his right to be heard; consistent with *Wilson v. Review Board of*

1. The majority perhaps feels compelled to reach the question because it was addressed by the Court of Appeals. That motivation is misplaced, however, for pursuant to Ind.R.App.P. 11(B)(3), this Court, in granting transfer, "has jurisdiction of the appeal as originally filed" in the Court of Appeals. We may sustain a judgment on any proper grounds, of course, even if the basis for our decision was not embraced below. *Cain v. State,* (1973) 261 Ind. 41, 300 N.E.2d 89. If it was not appropriate for our Court of Appeals to address the constitutional question, our rules would make little sense if this Court was required to compound that error.

*Ind. Emp. Sec. Div., supra,* he should be allowed to seek a trial *de novo* on the constitutionality of the statute, where a development of the facts could occur.

I dissent.