**MARSYM DEVELOPMENT CORP.**
Appellant (Plaintiff Below),

v.

**WINCHESTER ECONOMIC DEVELOPMENT COMMISSION: Gene Gulley, Member; Bill Geyer, Member; Robert Pugh, Member; Richard Walker, Member; Common Council of the City of Winchester, Indiana: Arthur P. Cassidy, Councilman; Charles W. Wolf, Councilman; Robert Baker, Councilman; James Blansett, Councilman; Helen Segraves, Councilman; City of Winchester, Indiana; Jack Fowler, Mayor of the City of Winchester, Indiana; Marsh Supermarkets, Inc.; Appellees (Defendants Below).**

No. 1–682A152.

Court of Appeals of Indiana,
First District.

April 19, 1983.

Rehearing Denied May 23, 1983.

William A. Waddick, Willis K. Kunz, Kunz & Kunz, Indianapolis, for appellant.

Michael C. Williams, Winchester, G. Daniel Kelley, Jr., Jeffrey O. Lewis, Ice, Miller, Donadio & Ryan, Indianapolis, George F. Daly, Daly & Daly, Winchester, for appellees.

ROBERTSON, Presiding Judge.

The plaintiff-appellant, Marsym Development Corporation (Marsym), appeals the granting of summary judgment on behalf of the defendants, the Winchester Economic Development Commission (EDC), the Common Council of the City of Winchester (Council), the Mayor of Winchester, and Marsh Supermarkets, Inc. (Marsh) on their complaint for a declaratory judgment. The complaint sought construction of Ind.Code 18–6–4.5–1 *et seq.*[1] which concerns the issuance of economic development bonds. The trial court held that Marsym did not have standing to pursue its complaint. We reverse and remand.

Marsym owns and opérates a shopping center in Winchester, Indiana. For 19 years Marsh was the major tenant in the center. The current lease was to expire at the end of 1983. Marsh decided that it needed a much larger space for its supermarket and that it would build its own facility on property near Marsym's shopping center. Marsh applied to the EDC for financing to construct its proposed new store. The EDC adopted an inducement resolution which granted preliminary approval for the project and indicated its present intent to issue bonds at a later date, as well as authorizing Marsh to make expenditures which would be reimbursed from proceeds of bonds to be issued in the future. Shortly thereafter, the Council passed a similar resolution.

Thereafter, Marsym filed a complaint for declaratory judgment against EDC, asking the court to declare illegal the EDC's actions in the adoption of its resolution approving the issuance of bonds to finance the construction of the facility to be leased by the City of Winchester to Marsh Supermarket.

Subsequently, the Council passed an ordinance which approved sale of the bonds. Marsym filed a second complaint for declaratory judgment against the EDC and its members, and against the Council and its members, asking the trial court to declare the actions of the EDC and the Council, which culminated in passage of the ordinance, illegal.

---

1. Title 18 has been recodified and I.C. 18–6–4.-5–14, which is the focal point of this appeal, has been amended since this litigation began.

Current law is found at Ind.Code 36–7–12–1 *et seq.*

On Marsym's motion, both cases were venued from Randolph County to Wayne County and on EDC's motion the cases were consolidated. Marsh was permitted to intervene as a party defendant. Then Marsym was allowed to file an amended complaint. Count I of Marsym's amended complaint is the subject of this appeal.

Count I alleged both the EDC and the Council failed to comply with I.C. 18–6–4.-5–1 in passing the inducement resolution and the ordinance. Among several allegations, the complaint alleged that the EDC failed to consider whether the proposed Marsh facility would have an adverse competitive effect on similar existing facilities as required by I.C. 18–6–4.5–14.[2]

All parties filed motions for summary judgment.[3] The trial court entered partial summary judgment for Marsym on some issues, which primarily dealt with the EDC's failure to approve the complete terms for issuing bonds in its resolution and therefore, the Council's failure to approve all those terms in its ordinance. The trial court enjoined further action by the EDC and the Council except for resubmission of the bond proposal for EDC approval. The trial court also entered partial summary judgment for Marsh holding that I.C. 18–6–4.5–14 is not a specific prerequisite to approval of economic development bonds, that the proposed facility would have no adverse competitive effect on similar facilities because Marsh operated the existing store,

and that the record supported the EDC's and the Council's actions.

The trial court finalized its summary judgments pursuant to Ind.Rules of Procedure, Trial Rule 56(C). All parties filed motions to correct errors. The trial court completely reversed its original decision when it ruled on the motions. The trial court set aside its prior summary judgments; it denied Marsym's motion to correct errors which challenged its interpretation of I.C. 18–6–4.5–14 and it granted the defendants' prior motions for summary judgment based on Marsym's lack of standing.

Marsym alleges that it does have standing to challenge the bond procedures and that the trial court erred in its interpretation of I.C. 18–6–4.5–14 made in the original judgment.

■ Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind.Rules of Procedure, Trial Rule 56(C). The party seeking the summary judgment has the burden of establishing that there are no material facts in controversy and any doubt will be resolved against the moving party. The evidentiary matters before the court are, therefore, to be construed in a light most favorable to the nonmoving party. Even if the facts are not in dispute, a summary judgment is inappropriate when the information before the court reveals a

2. I.C. 18–6–4.5–14 read:

The commission may from time to time enter into negotiations with any one or more persons, firms, partnerships, trusts, associations or corporations (whether for profit or not-for-profit) concerning the terms and conditions of financing facilities. *A commission should consider whether a proposed facility may have an adverse competitive effect on similar facilities already constructed or operating in the municipality.* Preliminary expenses in connection with such negotiations may be paid from money furnished by the proposed user or developer or from money made available by the state of Indiana, the United States of America, or any department or agency of either, or from funds of the development commission. (Emphasis added.)

3. The defendants also filed motions to dismiss. Both the motions to dismiss and the motions for summary judgment challenged Marsym's standing. Marsym argues the standing issue was not timely raised. The various motions were filed in response to Marsym's original complaints. The trial court allowed Marsym to amend its complaint with the defendants' stipulation that their previously filed motions would apply to Marsym's amended complaint. Under the facts in this case, the trial court had discretion to grant or deny Marsym's motion to amend its complaint, Ind.Rules of Procedure, Trial Rule 15(A); *e.g. Hargis v. United Farm Bureau Mut. Ins.,* (1979) Ind.App., 388 N.E.2d 1175, and granted amendments on the defendants' stipulation. Therefore, Marsym was bound by this stipulation and the standing issue was properly before the trial court.

good faith dispute as to the inferences to be drawn from those facts. *R.R. Donnelley & Sons v. Henry-Williams, Inc.*, (1981) Ind. App., 422 N.E.2d 353, 355.

■ Our standard of review is the same standard utilized by the trial court, *Number One Beverage, Inc. v. Miller Brewing Company,* (1982) Ind.App., 437 N.E.2d 508; we determine whether there are genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law.

In the case at bar, we are confronted with two interrelated legal issues: Whether Marsym has standing and what interpretation should be given to I.C. 18–6–4.5–14. In order to resolve Marsym's standing, the statute must be interpreted. The facts are essentially undisputed as they relate to Count I of Marsym's complaint; instead, the dispute concerns the legal impact of the facts.

Our supreme court explained the general concept of standing in *City of Indpls., et al. v. State Tax Comm'rs., et al.,* (1974) 261 Ind. 635, 308 N.E.2d 868 stating:

> For the disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question of whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's exercise of its jurisdiction in that we cannot proceed where there is no demonstrable injury to the complainant before us.

■ In order for potential plaintiffs to satisfy the "demonstrable injury" requirement, they must show a substantial present interest in the relief sought and show that a question affecting their rights has arisen which should be decided to protect those rights. *Lutheran Hospital, etc. v. Dept. P.W. etc.,* (1979) Ind.App., 397 N.E.2d 638. Plaintiffs must also show a "special injury" different from that suffered by the general public. *Cablevision of Chicago v. Colby Cable Corp.,* (1981) Ind.App., 417 N.E.2d 348.

These concepts are reflected in our declaratory judgment act, Ind.Code 34–4–10–1 *et seq.,* by section 2 which states:

> Who may have determination and obtain declaration.—*Any person* interested under a deed, will, written contract or other writings constituting a contract, or *whose rights status or other legal relations are affected by a statute, municipal ordinance* contract or franchise, *may have determined any question or construction or validity arising under the* instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder. (Emphasis added.)

Marsym of course filed its complaint pursuant to this act. The essence of Marsym's complaint is that its contractual relationship with Marsh, a lease, will be adversely affected by the ordinance authorizing Marsh's bond proposal and by the interpretation which the EDC, the Council, and the trial court gave to I.C. 18–6–4.5–14. Marsym asserts section 14 required the EDC to consider the potential adverse competitive effect Marsh's proposed facility would have on its existing shopping center as a prerequisite to the enabling resolution. Marsym also argues the trial court erred by finding that there would be no adverse competitive impact from the new facility because Marsh operated the existing store and would be operating the new store. Finally, Marsym contends the record of proceedings before the EDC does not support the trial court's finding that the EDC and the Council satisfied section 14.

The defendants' counterargument is that Marsym's actual claim, if any, concerns Marsym's lease with Marsh and whether Marsh has a right to move its supermarket under the lease. Thus, the defendants assert Marsym has failed to show a nexus between any injury it may suffer and the bond authorization procedures. Therefore, they conclude that any declaratory relief invalidating the bond ordinance will not protect Marsym from potential injury because it would not prevent Marsh from moving its store or compensate Marsym.

Their argument is predicated on the premise that I.C. 18–6–4.5–14 is not a prerequisite to the EDC's approval of a bond proposal and that Marsym is simply complaining about losing its primary tenant. The defendants contend the bond proposal was simply one of several financing methods available to Marsh and had no other impact.

Although the balance of Marsym's complaint deals with the lease, the defendants have oversimplified the relationship between the bond procedures and Marsym's potential injuries.

Marsh's letter to the EDC outlining the bond proposal in part stated:

The Company has operated a 16,000 square foot supermarket west of the Project site for the past 19 years. *If the requested financing arrangement is approved and the Project constructed, the supermarket presently operated will be closed and the storeroom most likely converted to other retail use.* In any event, the base term of the present lease expires in December, 1983. The following data reflects the expected direct impact on employment in the City of Winchester, net [sic] of those jobs which will represent mere transfers of personnel from the present store: (Emphasis added.)

Additionally, Marsym's lease with Marsh provided for base rental per month plus a percentage of gross sales after sales exceeded a certain amount. The lease gave Marsh options on Marsym's property after expiration of the current lease. In the past, the parties had renegotiated rent and additions to Marsym's original building. By financing its new store through economic development bonds, Marsh will be able to borrow money at a lower interest rate and to pay fixed lease-purchase payments to the city rather than a percentage rental to Marsym.

Given this evidence, we think it is reasonable to infer a causal relationship, a nexus, between the bond proceedings and Marsh's decision to relocate, particularly for purposes of summary judgment. Granted, the extent of Marsym's injury is not clear at this point, but it could be determined at trial.

■ Marsym has demonstrated potential injuries related to the bond procedures, however, the defendants contend any injuries are the result of lawful competition which is not actionable. Marsym concedes businesses are not protected from lawful economic competition, but asserts it is being subjected to "unfair competition" in part because the city's use of tax exempt economic development bonds puts it at a competitive disadvantage. We agree with the defendants that "unfair competition" generally involves tortious interference with business relationships and that the theory does not apply to governmental entities who enjoy tax advantages over private businesses. To the extent that Marsym's argument is based on such reasoning it fails. *Indiana State Fair Board v. Hockey Corporation of America,* (1975) 165 Ind.App. 544, 333 N.E.2d 104, (trans. granted affirming this point, reversing on other grounds.) 429 N.E.2d 1121. However, the essence of Marsym's argument is its contention that I.C. 14–6–4.5–14 requires the EDC to consider the adverse competitive effect of proposed economic development facilities on existing facilities. If Marsym's interpretation of section 14 prevails, Marsym has shown potential injuries apart from its lease with Marsh.

■ Turning to the construction of section 14, we note the following applicable rules. It is our duty to give effect to the legislature's intent when we construe a statute. *E.g. Barr v. Sun Exploration Co., Inc.,* (1982) Ind.App., 436 N.E.2d 821. The legislature's intent must primarily be determined from statutory language and it is our duty to give effect to the plain and ordinary meaning of the language used in the statute. *Jones v. Hendricks County Plan Commission,* (1982) Ind.App., 435 N.E.2d 82.

As shown *infra,* section 14 stated:

A commission *should consider* whether a proposal facility may have an adverse competitive effect on *similar facilities* already constructed or operating in the municipality. (Emphasis added.)

According to Webster's Third New International Dictionary (1966) p. 2104, when "should" is used in an auxiliary function, such as it is used in section 14, it expresses duty or obligation. Should is also the past tense of "shall" and Webster's cross references to "shall." In turn, when "shall" is used in laws, it expresses mandatory conduct. *Id.* at p. 2085. "Consider" means to "reflect or think about with a degree of care or caution". *Id.* at p. 483. Therefore, section 14 imposed a duty on economic development commissions to carefully evaluate the adverse competitive impact of proposed economic development projects.

Since this case began, section 14 has been recodified and amended as Ind.Code 36–7–12–21. The language has been amended to read, "The commission *shall* consider . . . ." (Emphasis added.) This amendment has simply clarified the legislature's original intent. *R.L. v. State,* (1982) Ind.App., 437 N.E.2d 482.

■ Therefore, given Marsym's potential injuries, the injuries relationship to the bond proceedings, and the EDC's duty to consider the adverse competitive impact of Marsh's project, Marsym has standing to bring its complaint.

■ Next, we consider whether the trial court erred by finding that there was no adverse competitive effect from Marsh's proposed facility and by finding that the EDC had complied with I.C. 18–6–4.5–14.[4]

The trial court's finding was based on the fact that Marsh was operating the original store and would be operating the new store. Marsym argues "similar facilities" as used in section 14 can refer to the structures containing the stores as well as the stores themselves. Marsym argues the old and new structures will compete for clients. Ind.Code 18–6–4.5–2, now Ind.Code 36–7–12–2, defines "facilities" as "economic development facilities and pollution control facilities". This section defines "economic development facilities" as "facilities for

manufacturing, storage, or processing of goods, or for the carrying on of commercial, business, or recreational activities". Marsym's building is a facility for the carrying on of commercial or business activities. Likewise, Marsh's proposed building although owned by the city, will be a facility for commercial or business activity. The trial court's finding is clearly erroneous. Ind.Rules of Procedure, Trial Rule, 52(A).

■ Similarly, the trial court's finding that the EDC and the Council satisfied I.C. 18–6–4.5–14 is clearly erroneous. This finding is predicated on interpretations of section 14 which we have found to be erroneous. The record reveals the EDC simply concluded that no adverse competitive impact would occur without examining evidence. An administrative agency's conclusions must be supported by findings of fact and the findings must be supported by substantial evidence of probative value.

The trial court's judgment is reversed and this cause is remanded to the trial court for action consistent with this opinion.

NEAL, J., concurs.

RATLIFF, J., concurs in result.

---

**4.** These findings were made in the trial court's original judgment prior to ruling on the parties' motions to correct errors. Marsym raised the issues in its motion to correct errors which was denied. The issues are before us pursuant to Ind.Rules of Procedure, Trial Rule 59(F).