MARSYM DEVELOPMENT CORP., Appellant (Plaintiff below),

v.

WINCHESTER ECONOMIC DEVELOPMENT COMMISSION; Gene Gulley, Member; Bill Geyer, Member; Robert Pugh, Member; Richard Walker, Member; Garl Walker, Member; Common Council of the City of Winchester, Indiana; Arthur P. Cassidy, Councilman; Charles W. Wolf, Councilman; Robert Baker, Councilman; James Blansett, Councilman; Helen Segraves, Councilman; City of Winchester, Indiana; Jack Fowler, Mayor of the City of Winchester, Indiana; Marsh Supermarkets, Inc., Appellees (Defendants below).

No. 1–682A152.

Supreme Court of Indiana.

Jan. 3, 1984.

William A. Waddick, Willis K. Kunz, Kunz & Kunz, Indianapolis, for appellant.

George F. Daly, Daly & Daly, Winchester, for appellees, Winchester Economic Development Com'n and members.

Michael C. Williams, Winchester, for appellees, City of Winchester, Common Council and mayor.

G. Daniel Kelley, Jr., Jeffrey O. Lewis, Stephen M. Terrell, Ice, Miller, Donadio & Ryan, Indianapolis, for appellee, Marsh Supermarket.

ON PETITION TO TRANSFER

Transfer denied.

Opinion below: (1983) 447 N.E.2d 1138.

HUNTER, Justice, dissenting to denial of transfer.

I respectfully dissent to the denial of the petition to transfer from the Court of Appeals' decision in *Marsym Dev. Corp. v. Winchester Economic Dev. Comm'n*, (1983) Ind.App., 447 N.E.2d 1138. The defendants in this case, The Economic Development Commission (EDC), The Winchester City Council, The City of Winchester, and Marsh Supermarkets, Inc., seek review of the Court of Appeals' reversal of a summary judgment in favor of the defendants. The plaintiff, Marsym Development Corporation (Marsym) filed a complaint for declaratory judgment, and sought a construction of Ind.Code § 18–6–4.5–1 et seq. (recodified at Ind.Code § 36–7–12–1 et. seq. (Burns 1981 Repl.)). The trial court granted the defendants' motion for summary judgment on the ground that Marsym lacked standing. The Court of Appeals reversed and held that there were sufficient grounds for standing. I would grant transfer, vacate the Court of Appeals' decision, and affirm the trial court.

Marsh was for several years the major tenant in a shopping center owned by Marsym. Although the lease did not expire until the end of 1982, Marsh decided in 1980 to build a larger store at another location. In order to do so, Marsh applied to the EDC for financing. The EDC granted preliminary approval for the project. Marsym then filed a complaint for declaratory judgment against the EDC. Marsym later filed a second complaint against the City Council and its members after the Council passed an ordinance approving the sale of the economic development bonds. Marsh was allowed to intervene as a party defendant, and Marsym was allowed to amend its complaint accordingly. Further procedural aspects of the case are set out in detail in the Court of Appeals' decision and need not be repeated here. It is sufficient to note that the trial court eventually granted a summary judgment in favor of the defendants on the ground that Marsym lacked standing.

Standing is a prudential limitation on the ability of individuals to seek redress in our courts. *Cablevision of Chicago v. Colby Cable Corp.*, (1981) Ind.App., 417 N.E.2d 348. In the case of a declaratory judgment, the requirements for standing are contained in Ind.Code § 34–4–10–2 (Burns 1973):

"Any person interested under a deed, will, written contract or other writings constituting a contract, or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question or construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder."

The essence of standing is that the plaintiff must demonstrate a direct and substantial injury, *Lutheran Hosp. of Ft. Wayne, Inc. v. Department of Pub. Welfare*, (1979) Ind. App., 397 N.E.2d 638, and this rule applies to declaratory judgment actions brought under the above section. The plaintiff in a declaratory judgment action must also show injury distinct or different in time from that of the general public and demonstrate a substantial present interest in the relief sought. *Lutheran Hosp. of Ft. Wayne v. Department of Pub. Welfare; Burridge v. City of Mishawaka*, (1948) 225 Ind. 613, 77 N.E.2d 297.

The Court of Appeals found that the standing requirement was satisfied in two ways. The first was that the bond proceedings would affect Marsym's contractual relationship with Marsh. The Court of Appeals reasoned that because Marsh would be able to borrow money at a lower rate of interest, there was "a causal relationship, a nexus, between the bond proceedings and Marsh's decision to relocate ...." 447 N.E.2d at 1143. I believe that a closer examination of the issue, however, shows that the bond proceedings do not *directly* affect Marsym's contractual relationship with Marsh under the lease. Marsym's complaint in this action is essentially contractual, dealing with interpretations of a lease and alleged violations of it by Marsh. This lease is the "legal relation" that stands to be affected by the bond proceedings. *See* Ind.Code § 34-4-10-2. The bond proceedings add nothing to the ultimate issue of whether, *under the terms of the lease*, Marsh could move from its existing store. True, lower interest rates may have persuaded Marsh to go forward with their decision to move and to expand. Marsym contends it will be affected by this move because of the rent it will lose. But it is not the bond proceedings that cause the lost rents, it is Marsh's move. Whether Marsh had the right to make the move, in light of their lease with Marsym, existed without regard to whether Marsh could borrow under an economic development project. The effect of the bond proceedings on the "legal relation" is indirect at

best, and it is not sufficient to confer standing. *See Sendak v. Allen*, (1975) 164 Ind.App. 589, 330 N.E.2d 333. Furthermore, the Court's judgment in this matter, if rendered, would not change or affect the contractual relations, and the judgment would not effectively solve the problem. *See Volkswagenwerk, A.G. v. Watson*, (1979) Ind.App., 390 N.E.2d 1082; BORCHARD, DECLARATORY JUDGMENTS 75 (2d ed. 1941). As such, the bond proceeding and its relationship to the lease was not a sufficient basis to find standing existed. Since no legal relation was directly affected, Marsym did not have a right to have the construction or validity of the statute decided.

The Court of Appeals also held that a second ground existed for finding standing. This ground was Ind.Code § 18-6-4.5-14 (recodified at Ind.Code § 36-7-12-21 (Burns 1981 Repl.)). The Court of Appeals stated summarily that, if Marsym's interpretation of this section were correct, Marsym had shown potential injuries apart from the lease with Marsh. The court then accepted Marsym's interpretation, holding that the EDC was required to consider the adverse competitive effect of the proposed economic development facilities on existing facilities. The Court of Appeals further held that the conclusion of the EDC must be supported by findings of fact and that the findings must be supported by substantial evidence of probative value.

Although never expressly articulated, the Court of Appeals' holding that standing existed by virtue of Ind.Code § 18-6-4.5-14 was apparently based on the rule that where a statutory provision reflects a legislative purpose to protect a competitive interest, an injured competitor has standing to require compliance with the statute. *Hardin v. Kentucky Utilities Co.*, (1968) 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787; *Chicago v. Atchison, Topeka & Santa F.R. Co.*, (1958) 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174. The Court of Appeals, however, by holding that the EDC did not comply with our statute, incorrectly focused on the merits of the argument before

actually finding standing. The issue when finding standing under the above rule is not whether there has been statutory compliance but whether there is a legislative intent to protect a competitive interest and whether there is an injured competitor. If so, *then* the party has standing and the court can decide if the statute was complied with.

While it is arguable that section 14 was designed to protect competitive interests, I do not believe that there was an injured competitor in this case since Marsym is not a competitor of Marsh or the City of Winchester. Marsh's new building is being built for Marsh; it is not being built for use by a tenant. Marsh and Marsym will not be competing for potential tenants. Also, the nature of the businesses are very different—one sells groceries while the other is basically a developer. Nor is the City a competitor of Marsym. The City derives no income from its lease with Marsh and is only a passive lessor. The rental payments under the lease between Marsh and the City are paid to a trustee for later payment to the bondholders. Winchester is not attempting to compete with Marsym and it does not do so. Therefore, since Marsym is not a competitor with Marsh, or with the City, it cannot be an "injured competitor." As there is no standing, it was improper for the Court of Appeals to decide that the EDC had not complied with Ind.Code § 18–6–4.5–14, since this issue went to the merits of the argument before the threshold question of standing had been answered.

Assuming, arguendo, that there was standing, I feel that the Court of Appeals' interpretation of Ind.Code § 18–6–4.5–14 was incorrect. The Court of Appeals held that section 14 created a mandatory duty on the EDC to consider the adverse competitive effect of the bond issuance. It went further, however, and held that the EDC's decision had to be supported by findings of fact and that the findings had to be based on substantial evidence of probative value. It is with this aspect of the holding that I cannot agree.

An economic development commission is essentially an advisory committee. Its purpose is to investigate each particular request for a bond issuance to determine its feasibility. It is the city council, however, that makes the final determination to approve financing. Ind.Code § 18–6–4.5–18 (recodified at Ind.Code § 36–7–12–25 (Burns 1981 Repl.)). The role of an economic development commission is much the same as a plan commission in zoning matters. It has been held that when a plan commission merely makes a recommendation, the recommendation does not have to be supported by findings of fact. *Hills v. Area Plan Com'n of Vermillion Cty*, (1981) Ind.App. 416 N.E.2d 456. Here, the EDC also only made a recommendation; the city council must pass an ordinance before financing is approved. The ordinance is the decision subject to review, not the recommendation. No findings are—or should be—required for such a recommendation.

Furthermore, nothing in section 14 indicates that the legislature intended economic development commissions to make specific findings on adverse competitive effects. When the legislature wanted findings to be made, they said so. Thus, Ind.Code § 18–6–4.5–17 (recodified at Ind.Code § 36–7–12–24 (Burns 1981 Repl.)) reads "[u]pon *findings* by the commission ...." (emphasis added). Had the legislature intended there to be findings on the adverse competitive effects, they would have said so. At the very least, the legislature would have given some guidance as to the type of findings required and the standards to be used. Nothing in the statute indicates a legislative intent to require specific findings of fact.

In short, all that section 14 required is that an economic development commission *consider* the adverse competitive effects. This was done in this case; the EDC considered the matter and concluded that no adverse competitive impact would occur. The EDC complied with section 14, and the Court of Appeals was wrong in holding that there was no compliance.

I therefore respectfully dissent to the Court of Appeals' decision. This decision incorrectly held that Marsym had standing and that Ind.Code § 18–6–4.5–14 had not been complied with. I feel that the Court of Appeals has allowed a private party to settle his controversy through a public lawsuit. Allowing this decision to stand will only encourage further similar suits. In the final analysis, the entire economic development bond system will be seriously impaired in its meritorious duties because of substantial time delays brought about by suits such as this. I therefore would grant transfer, vacate the Court of Appeals' decision, and affirm the trial court.

DeBRULER, J., concurs.