Marie EVANS, Personal Representative
of the Estate of Oscar Evans,
Appellant (Plaintiff Below),

v.

YANKEETOWN DOCK CORPORATION,
Appellee (Defendant Below).

No. 4–584A132.

Court of Appeals of Indiana,
Fourth District.

July 29, 1985.

Rehearing Denied Oct. 7, 1985.

Rodney H. Grove, Evansville, for appellant.

Gaylon L. Clark, Richard A. Clark, Clark, Statham, McCray, Thomas, & Krohn, Evansville, for appellee.

MILLER, Presiding Judge.

Marie Evans is the widow of Oscar Evans, a former employee of Yankeetown Dock Corp. (Yankeetown). In her capacity as personal representative of her husband's estate, she brought a wrongful death action against Yankeetown, alleging its negligence—by knowingly employing a mentally ill person who posed a physical threat to fellow employees—was the proximate cause of Oscar's death on Yankeetown's premises where he was fatally shot by such mentally ill co-worker. Yankeetown raised as a defense that Evans's claim was actionable only under the workers' compensation statutes, thereby leaving the trial court without jurisdiction. The trial court agreed and granted Yankeetown's motion for summary judgment based on said defense. We too agree and affirm.

## ISSUE

■ Does the Industrial Board, by reason of Indiana's workers' compensation laws, have exclusive jurisdiction over negligence claims against an employer for the wrongful death of an employee? [1]

## FACTS

On June 1, 1977, Harlan Miller shot and killed his co-worker, Oscar Evans, on Yankeetown's premises, just before Oscar was to begin his shift. Psychiatric examinations revealed Miller was suffering a form of alcohol-induced paranoia and, prior to the shooting, was under the hallucinatory delusion that his second wife was in cahoots with Oscar in a scheme to kill him by poisoning. Miller is currently confined in Evansville State Hospital.

Oscar's widow brought a wrongful death action against Yankeetown, alleging in substance that Yankeetown

"negligently permitted Harlan Miller to come on [Yankeetown's] premises and discharge a firearm at the plaintiff's decedent as he sat on the employer's premises awaiting to begin his work."

Record, p. 19. Evans's prayer for relief requested $1,000,000 in damages.

Yankeetown answered in general denial and later filed a defense, essentially alleging the trial court's lack of jurisdiction over this complaint as it was a workers' compensation claim. Yankeetown then moved for summary judgment on this defense, and there ensued a flurry of affidavits from both sides in support of and in opposition to the motion. Most pertinent to the issue here, Evans presented affidavits that contained the following assertions of Yankeetown's negligence:

1) A dock superintendent knew that Miller had made threats to harm Oscar (Record, p. 207);

2) That same superintendent declared to Oscar's son that "maybe I should have done something to prevent it." (Record, p. 207);

3) Miller's absences from work for personal business and illness increased in the five months immediately preceding the fatal shooting (Record, pp. 151–153);

4) A co-worker had heard that Miller and Oscar had "had trouble in the shower room." (Record, p. 90).

The second summary judgment, finally granted by the court and the object of the appeal here, reads:

---

1. Evans raised 25 issues for our review. Some are repetitive and one (#25) was waived for failure to present any argument on appeal. *See* Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). Almost all are improper for purposes of triggering review of a summary judgment because they attack it as lacking sufficient evidence and/or being contrary to law. On appeal, a summary judgment is reviewable only with regard to whether there are any genuine issues of material fact and to whether the trial court correctly applied the law. *Poole v. Corwin* (1983), Ind.App., 447 N.E.2d 1150. As a condensation of the essential premise of Evans's issues, a single question presents the thrust of her appeal to which we will apply the standard of review we have just recited. Any other issues she may claim as pertinent are either contained therein or extraneous to our review.

"The defendant, Yankeetown Dock Corporation, having filed its motion for summary judgment pursuant to Indiana Trial Rule 56 and the Court having considered the pleadings herein, the interrogatories and answers thereto and the affidavits filed herein, and having heard argument by the respective parties herein, now finds that there is no genuine issue as to any material fact herein as to the defendant, Yankeetown Dock Corporation, and that said defendant, Yankeetown Dock Corporation is entitled to judgment as a matter of law.

The Court finds that on June 1, 1977, Oscar Evans, plaintiff's decedent, and Harlan Miller, were co-employees of the defendant, Yankeetown Dock Corporation, being employed at the Yankeetown Dock facility at Yankeetown, Warrick County, Indiana. That on said date, Oscar Evans was shot and killed by Harlan Miller and that the death of Oscar Evans was the result of an accident which arose out of and in the course of his employment by Yankeetown Dock Corporation.

Based on the above and foregoing, the Court finds that the shooting and resulting death of Oscar Evans on June 1, 1977 was an accident which arose out of and in the course of Oscar Evans employment by Yankeetown Dock Corporation and that *the sole and exclusive remedy therefor against Yankeetown Dock Corporation is under and pursuant to the Workmen's Compensation Laws of the State of Indiana pursuant to Indiana Code Section 22-3-2-6.*

The Court finds that the motion for summary judgment on behalf of Yankeetown Dock Corporation should be and the same is hereby sustained as to all issues in plaintiff's complaint inasmuch as there is no genuine issue as to said defendant as to any material fact.

The Court further finds that there is no just reason for delay and now in writing, expressly directs entry of a final judgment in this cause in favor of Yankeetown Dock Corporation and against the plaintiff, Marie E. Evans, Personal Representative of the Estate of Oscar Evans.

It is, therefore, now ordered, adjudged and decreed by the Court that the motion of the defendant, Yankeetown Dock Corporation, for summary judgment in this cause be and is hereby sustained and that a final judgment in this cause be and is hereby entered in favor of the defendant, Yankeetown Dock Corporation, and against the plaintiff, Marie E. Evans, Personal Representative of the Estate of Oscar Evans, and that the costs of this matter be assessed against the plaintiff."

Record, pp. 212-13 (Emphasis added).

## DECISION

At the heart of any appellate review of a summary judgment lies the scrutiny of the trial court's function in determining whether there exists any genuine issues of material fact and whether the movant is entitled to judgment as a matter of law. *See* Ind. Rules of Procedure, Trial Rule 56(C); *Poole v. Corwin* (1983), Ind.App., 447 N.E.2d 1150; *Matter of Garden & Turf Supply Corp.* (1982), Ind.App., 440 N.E.2d 710. Procedurally,

"[t]he party seeking the summary judgment has the burden of establishing that there are no material facts in controversy and any doubt will be resolved against the moving party. The evidentiary matters before the court are, therefore, to be construed in a light most favorable to the nonmoving party. Even if the facts are not in dispute, a summary judgment is inappropriate when the information before the court reveals a good faith dispute as to the inferences to be drawn from those facts."

*Marsym Development Corp. v. Winchester Economic Development Commission* (1983), Ind.App., 447 N.E.2d 1138, 1141-42; *McEntire v. Indiana National Bank* (1984), Ind.App., 471 N.E.2d 1216. Our review of the proceedings clearly shows there is no genuine issue as to any fact material to the question raised, and Yan-

keetown was entitled to judgment as a matter of law.

■ It is apparent from the trial court's judgment that at the hub of its findings and conclusions is a jurisdictional issue. It is also apparent that the trial court's proper conclusion—that it had no jurisdiction over Evans's complaint—was based in part upon improper considerations (as we will discuss later). However, findings of fact are inappropriate in summary judgment because one of the basic elements of such judgment is that there *is* no genuine issue of material fact present in the case. *See Bond v. Peabody Coal Co.* (1983), Ind. App., 450 N.E.2d 542; *Uhl v. Liter's Quarry of Indiana, Inc.* (1979), 179 Ind.App. 178, 384 N.E.2d 1099. Therefore, we may ignore the extraneous findings upon which the trial court based its judgment and address ourselves to the sole problem at issue—jurisdiction. *See Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154.

■ Here, Evans's theory of recovery, as pleaded and as argued on appeal, is based upon a claim of negligence, that but for Yankeetown's negligence Harlan Miller (an employee) would not have been on its business premises nor then have shot and killed Evans's husband (a co-employee). In so arguing, Evans also asserts Oscar's death was not an "accident," and did not arise out of or in the course of his employment. Therefore, she argues she has a common law rather than a workers' compensation remedy because the Industrial Board must necessarily deny her claim. Yankeetown, in its defense, contends Oscar's death was an "accident" within the Board's jurisdiction statute and arose out of and in the course of his employment and is perforce within the exclusive jurisdiction of the Industrial Board. We agree with Yankeetown that Evans's claim was cognizable only under workers' compensation laws, but we reach that conclusion in a far

different manner than the parties have argued.[2]

■ The statute defining the exclusive jurisdiction of the application of workers' compensation laws is I.C. 22–3–2–6 (1976):

"The rights and remedies herein granted to an employee subject to this act on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death."

(Amended 1982 Ind.Acts, P.L. 21 § 50). Assuming for the moment a point which is not challenged here, that an employer and an employee are subject to workers' compensation statutes, the clear wording of I.C. 22–3–2–6 gives to the Industrial Board jurisdiction over, and preempts trial court consideration of, *"personal injury or death by accident"* when such employee seeks a remedy against such employer. That is it; that is the *sole* threshold consideration for the Industrial Board's jurisdiction. There is no other qualifying language, as is found in the actual compensation statute, IND.CODE 22–3–2–2 (1976) (amended 1981 Ind.Acts, P.L. 11 § 125), where an employer is required to pay an employee "for personal injury or death by accident *arising out of and in the course of the employment."* (Emphasis added.) In other words, the ultimate determination of the Board that one is not entitled to benefits because the injury did not arise out of and in the course of employment has no effect on the fact the Board had initial and *exclusive* jurisdiction in the first place. We believe emphasizing this distinction is very important because ultimately it means this court for more than a half century has on occasion misconstrued workers' compensation law by contorting pristinely simple legislative language into a virtually unworkable definition of "accident." We hope to rectify this problem.

2. Our legal differences with Marie's arguments highlight the distinction we make in this opinion between the Industrial Board's jurisdiction and a claimant's ability to qualify for benefits. Our opinion notes that the Industrial Board has exclusive jurisdiction over a particular class of employer/employee compensation cases. The fact that the Board may ultimately rule against a claimant does not deprive it of its jurisdiction as Marie seems to argue.

We first look again at the jurisdictional watershed: The Industrial Board has exclusive jurisdiction in a claim based on "personal injury or death by accident." "Personal injury or death" is self-explanatory, but this court has had enormous problems with "accident." It is notable that, perhaps for the first time, we acknowledge the fact that the pertinent phrase is "by accident," *not* "by *an* accident." We believe this omission by the legislature is crucial to a correct interpretation of workers' compensation law because it slightly shifts the focus of the courts and the Industrial Board as it currently exists to the proper focus of the statutes as it was meant to exist. By this we mean that "by accident" defines a somewhat different scope for workers' compensation than the current case law defines.

For what appears to be time immemorial, our courts have defined "by accident" to mean "an unlooked for mishap or untoward event not expected or designed." *See, e.g.*, *Calhoun v. Hillenbrand Industries, Inc.* (1978), 269 Ind. 507, 381 N.E.2d 1242; *Martinez v. Taylor Forge & Pipe Works* (1977), 174 Ind.App. 514, 368 N.E.2d 1176; *Furst Kerber Cut Stone Co. v. Mayo* (1924), 82 Ind.App. 363, 144 N.E. 857. We have found only a couple of Indiana cases to date that dispute this definition, (*see Inland Steel Co. v. Almodovar* (1977), 172 Ind.App. 556, 361 N.E.2d 181; *Indian Creek Coal & Mining Co. v. Calvert* (1918), 68 Ind.App. 474, 119 N.E. 519), and, in fact, it appears most other jurisdictions with statutes so worded adhere to this definition. *See* 81 Am.Jur.2d *Workmen's Compensation* § 277 (1976) and cases cited therein. The result of such interpretation is to create confusion over what "event" is at issue—do we look at an unexpected injury or an unexpected source of injury? The result of parrying the issue is that the "event" is now determined by either the "unexpected cause" theory or the "unexpected result" theory. *E.g., Ellis v. Hubbell Metals, Inc.* (1977), 174 Ind.App. 86, 366 N.E.2d 207. Thus, workers' compensation can encompass a worker injured while doing his routine labor (*see id.*) and a worker injured by an unexpected cause, such as being shot by an insane co-worker. However, grappling with determining what is or is not an "event" has caused so much confusion that it has led one judge to lament that "the word 'accident' has been elasticized to the breaking point." *Estey Piano Corp. v. Steffen* (1975), 164 Ind.App. 239, 250, 328 N.E.2d 240, 247 (Buchanan, J. concurring) (footnote omitted); *see also* Note, 13 VAL.U.L.REV. 535 (1979). In addition, this definition necessarily includes "personal injury or death," the other element in I.C. 22–3–2–6, when a court uses the "unexpected result" theory. Why, then, would the legislature include the words "personal injury or death" in its jurisdiction statute if they were meant to be covered by the term "accident"? *See Burks v. Bolerjack* (1981), Ind., 427 N.E.2d 887 ("the language employed in a statute is deemed to have been used intentionally." Emphasis deleted.) We believe all this anguish is unnecessary because the legislature obviously did not mean for the current court definition of "accident" to be utilized when it composed I.C. 22–3–2–6.

The chief drawback of using this definition, "accident" as "event," is that it presumes the workers' compensation laws were meant to remedy an "accident" and thereby be regulated by an "event." They were not enacted for such purpose. Rather, workers' compensation laws were enacted to cover liability without fault for *injuries* or *death* in the workplace, as social legislation whereby employers (and ultimately consumers) would bear the burden of the risk of insecurity and poverty of injured employees. *See* B. SMALL WORKMEN'S COMPENSATION LAW OF INDIANA § 1.1 (1950). This, then, is the jurisdiction of Indiana's workers' compensation act, and this is clearly the principle that the language of I.C. 22–3–2–6 was meant to convey. "Personal injury or death" is the compensable status of the employee; "by accident" is the *condition* under which this status occurred. More specifically, the "personal injury or death" is that for which an employer is held liable. Thus, the focus

of the statute (and in workers' compensation policy) is not on any event but upon the social ill meant to be recompensed—injury or death. "By accident" defines the conditions under which an employer will be liable and an employee will collect for such injury or death. We reach this result by observing the omission of any adjectival article ("a," "the," "an") in the phrase "by accident" and by utilizing another popular definition of "accident": "lack of intention or necessity: chance—often opposed to design." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 11 (1976) ("accident" defined).[3] As Judge White opined in *Inland Steel Co. v. Almodovar, supra,* 172 Ind.App. 556, 361 N.E.2d 181:

> "Perhaps it is a mistake to attempt to define 'accident' when what we are concerned with is not the definition of the word standing alone but the concept expressed in the phrase: 'injury by accident'. If we accept, which we do, the concept expressed in *Indian Creek* then 'injury by accident' is the equivalent of 'accidental injury'. Which is to say that 'injury by accident' is not the equivalent of 'injury caused by accident' or 'injury resulting from an accident'. As the Harvard Law Review article [Bohlen, *A Problem in the Drafting of Workmen's Compensation Acts,* 25 HARV.L.REV. 328 (1912)] quoted *supra* in the excerpt from *Indian Creek* says, '[t]he test as to whether an injury is unexpected and so if received on a single occasion occurs "by accident" is that the sufferer did not intend or expect that injury would on that particular occasion result from what he was doing.' "

*Id.* at 564–65, 361 N.E.2d at 187. We believe our definition here clearly fits the social policy of remedying injuries or deaths in industry which have been caused unintentionally.

A proper reading of the pure language of the statute, then, leads us inexorably to the conclusion that I.C. 22–3–2–6 plainly and *only* defines jurisdiction of workers' compensation law as the social and public policy meant to compensate employees' injuries or death incurred in the absence of intention, or by chance. Any attempt to engraft further conditions upon this threshold, such as whether the injury arose out of or in the course of employment, is clearly not contemplated, or the statute would have contained those words, as in I.C. 22–3–2–2.[4] Thus, the trial court's conclusions and Evans's arguments, considering whether Oscar was working for Yankeetown or whether the shooting arose out of the employment situation, are all irrelevant. The only question before the court was whether it or the Industrial Board had the power to hear Evans's claim. By making determinations that Oscar's death arose out of and in the course of his employment, the court was ruling Evans had a workers' compensation claim within I.C. 22–3–2–2. The resolution of whether Evans had such a claim is the duty of the Industrial Board, not of the court. Thus, its findings are not pertinent to the jurisdictional question (which is all that it had the authority to answer), and which is, simply, did Oscar (as a qualifying employee) die by chance? Our answer is quite obviously "yes," thereby placing Evans's claim within the workers' compensation act and outside the trial court's jurisdiction.

---

**3.** "By" in this context is "a function word to indicate something that forms an accompanying setting or condition." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 307 (1976) ("by" defined).

**4.** We are aware that "personal injury" has been defined in such terms within the act:

> "'Injury' and 'personal injury' mean only injury by accident arising out of and in the course of employment and do not include a disease in any form except as it results from the injury."

IND.CODE 22–3–6–1(e). However, this definition is qualified by the proviso at the beginning of the definitional section that it applies "unless the context otherwise requires." It is obvious that I.C. 22–3–2–6's inclusion of the words "by accident" clearly precludes, contextually, the use of a definition with that same language. Therefore, the additional language of the definition of "injury" cannot be implied within I.C. 22–3–2–6 for jurisdictional purposes.

We reach this conclusion because of our definition of the conditions under which an injury or death must occur to be within the act. Such condition must be a lack of intention, or by chance. This condition, we posit, covers injuries with no discernable causation under strict liability,[5] and includes those ordinarily classified under theories of negligence.[6] Of course, this liability has been limited by statute when the employee has engaged in certain intentional behavior.[7] Since such is not alleged of Oscar, we look only at the condition surrounding his death. From the standpoint of *both* Yankeetown and Oscar,[8] did Oscar die unintentionally? It is clear that he did.

The facts presented for summary judgment most favorable to Evans show that at the time of his death, Oscar was on Yankeetown's premises shortly before his shift began. Harlan Miller, activated by alcoholic delusions and hallucinations, shot him dead. A Yankeetown supervisor was aware that Miller had threatened Oscar and expressed remorse that perhaps he "should have done something to prevent it." On this basis, Evans argued that but for Yankeetown's negligence Oscar would not have been shot. Taking all these facts, we believe it apparent that Evans could at most prove negligence. Negligently incurred injuries are covered by the workers' compensation coverage under strict liability, and Evans is thus foreclosed from pursuing her suit in the trial court. *See Tribbett v. Tay Mor Industries, Inc.* (1984), Ind.App., 471 N.E.2d 332 (to the extent applicable to negligence). There was no genuine issue of material fact presented to the trial court in this summary judgment proceeding which elevated this claim into something other than negligence, and the trial court properly ruled the Industrial Board has jurisdiction as a matter of law. Summary judgment was appropriate. *See* T.R. 56(C). *Miller* may have intended to shoot Oscar, but as far as Yankeetown and

5. We define "strict liability" to mean liability will attach despite all the care exercised by the employer. *See generally* W. PROSSER, LAW OF TORTS § 75 (1971); *see also Fruehauf Trailer Division v. Thornton* (1977), 174 Ind.App. 1, 366 N.E.2d 21 (products liability).

6. As Prosser has explained it:
   "Workmen's compensation is thus a form of strict liability. The employer is charged with the injuries arising out of his business, without regard to any question of his negligence, or that of the injured employee. He is liable for injuries caused by pure unavoidable accident, or by the negligence of the workman himself. The three wicked sisters of the common law—contributory negligence, assumption of risk and the fellow servant rule—are abolished as defenses. The only questions remaining to be litigated are, first, were the workman and his injury within the act, and second, what shall be the compensation paid. Since in most cases the compensation is fixed by the statute itself, the result has been most satisfactory in that injured employees receive immediate relief, a fruitful source of friction between employer and employee has been eliminated, * * * a tremendous amount of burden and expensive litigation has been eliminated, and a more harmonious relation between the employers and employees exists than was possible under the old system." PROSSER, supra, § 80 at 531 (footnotes omitted); *O'Dell v. State Farm Mutual Automobile*

Ins. Co. (1977), 173 Ind.App. 106, 362 N.E.2d 862.

7. "No compensation is allowed for an injury or death due to the employee's knowingly self-inflicted injury, his intoxication, his commission of an offense, his knowing failure to use a safety appliance, his knowing failure to obey a reasonable written or printed rule of the employer which has been posted in a conspicuous position in the place of work, or his knowing failure to perform any statutory duty. The burden of proof is on the defendant."
   IND.CODE 22–3–2–8.

8. We are aware of precedent that one must interpret "by accident" only from the viewpoint of the employee, i.e. was the event unexpected by the employee? *See, e.g., Cunningham v. Aluminum Co. of America, Inc.* (1981), Ind.App., 417 N.E.2d 1186.
   We do not adhere to this policy for three reasons: (1) it relied on the "accident" as "event" notion which we abjure; (2) there is no legislative language in I.C. 22–3–2–6 that would even imply this policy; (3) and the case law supplies no rationale for adhering to it. To the contrary, workers' compensation is to benefit both parties and takes no side over the other, particularly in this facially neutral jurisdictional statute. We therefore view the condition objectively, from both parties' viewpoints.

Oscar are concerned, Oscar died fortuitously.

We reiterate that our interpretation of the phrase "personal injury or death by accident" differs from that ordinarily found in Indiana appellate cases. To be fair, most of those cases arose in the context of appeals from the Industrial Board where the issue at stake was derived from the actual compensation statute (I.C. 22–3–2–2) rather than the jurisdictional statute (I.C. 22–3–2–6). *See, e.g. Martinez v. Taylor Forge & Pipe Works, supra*, 174 Ind. App. 514, 368 N.E.2d 1176; *Ellis v. Hubbell Metals, Inc., supra*, 174 Ind.App. 86, 366 N.E.2d 207. In I.C. 22–3–2–2, the pertinent phrase is found as follows: "personal injury or death by accident arising out of and in the course of the employment...." From this, our courts have traditionally determined that "accident" is defined as an "event" which arose out of and in the course of employment. As we have explained earlier, the emphasis of workers' compensation laws is not upon an event but upon the injury and its condition. Thus, the language "arising out of and in the course of employment" qualifies, not just "accident" but the entire jurisdictional threshold, "personal injury or death by accident." To do otherwise, of course, would cause a conflict in identical phraseology merely because it is located in separate statutes: "accident" as "event" in I.C. 22–3–2–2 and "accident" as "condition" in I.C. 22–3–2–6. We can hardly credit our legislature with such an absurd intention. Thus, our definition of "by accident" from the jurisdictional statute necessarily alters the meaning of the claim statute. However, we believe this does not change our case law in any respect but one and, in fact, eases the onus of applying the statute to workers' claims.

Earlier, we explained that the Industrial Board's goal is to determine if a claim exists when there has occurred a personal injury or death by accident as between a qualifying employer and employee. Once its jurisdiction is established, the Industrial Board *then* determines whether such injury or death arose out of and in the course of employment. On review, the appellate courts can then determine the time, manner, and causation of the injury from *this* viewpoint rather than engaging in the current contortionate practice of adapting the meaning of the word "accident" as an event, dependent upon whether they need a "result" event or a "cause" event. Certainly, it is not suggested that the following cases are not within the Board's jurisdiction. For instance, the worker who dies of a heart attack while engaged in routine labor has died by accident. Further investigation reveals, however, that the worker suffered a pre-existing heart condition. Obviously, then, his death did not arise out of his employment and there is no compensation due. Or, take for example, the circumstance where an employee is injured by unusual exertion in the course of his work. No event can really be pinpointed yet the injury was accidental. In this example, the issue is causation clearly arising from the employment—the event is not the issue. The injury did arise out of and in the course of employment and is compensable. Our simplified definition eases the application of the compensation statute rather than tortures it yet does not change its essential application. In addition, a close reading of many cases in our jurisdiction reveals that instead of *claims* being decided upon an interpretation of "accident," they were actually decided by the fact the injury either did not arise out of employment or did not occur in the course thereof. *See, e.g., United States Steel Corp. v. Dykes* (1958), 238 Ind. 599, 154 N.E.2d 111; *Chestnut v. Coca Cola Bottling Co.* (1969), 145 Ind.App. 504, 251 N.E.2d 575. Thus, our approach to "by accident" does not change the law as it has been applied.[9]

---

**9.** Although unnecessary to our decision, we note our definition of "by accident" most likely does not include acts of willful or wanton misconduct (*see Medical Licensing Board of Indiana v.* *Ward* (1983), Ind.App., 449 N.E.2d 1129; *Becker v. Strater* (1947), 117 Ind.App., 504, 72 N.E.2d 580) by an employer against an employee. (Such behavior by an employee is already gov-

Our conclusion makes it easier to administer the statute on review whereas the prior definition of "accident" as "event" was messy and intellectually illogical. We acknowledge that we are virtually a lone voice in the wilderness with this construction but believe that blind adherence to an incorrect and irrational practice serves no good purpose. Our approach does not so much revolutionize the law as much as it simplifies it by attributing to the workers' compensation act the true societal interests and values it was meant to protect.

In the instant case, workers' compensation covers Evans's case for negligence, and the trial court properly ruled that it itself had no jurisdiction.

Affirmed.

YOUNG, J., concurs.

CONOVER, J., concurs in result with separate opinion.

CONOVER, Judge, concurring in result.

I concur in the result reached by the majority, but for different reasons than did the majority.

The majority lays down a new rule for determining whether the Industrial Board or a court of general jurisdiction has exclusive jurisdiction of a case involving an employer and an injured employee. Succinctly stated the new rule is

If an injured employee seeks a remedy against or compensation from his employer for personal injury or death by accident, the Industrial Board has exclusive jurisdiction of the case,

without the qualifying factor the accident must arise out of and in the course of the worker's employment.

In my opinion, the jurisdictional rule must contain the qualifying factor. Otherwise, the Industrial Board would have exclusive jurisdiction of cases involving off-the-job injury or death. For example, if an employee is injured when struck by his employer's truck in the middle of town on his day off, the Industrial Board would have exclusive jurisdiction under the new rule proposed. Clearly, the legislature did not intend the Board should have jurisdiction in such cases. The qualifier "arising

---

erned by IND.CODE 22-3-2-8, *see* note 7, *supra*.) This would, of course, conflict with current case law in this jurisdiction where an employee's sole remedy for the alleged willful or wanton misconduct of his employer is through worker's compensation. *See Cunningham v. Aluminum Co. of America, supra,* 417 N.E.2d 1186 (alleged intentional failure to provide safe workplace); *McLaughlin v. American Oil Co.* (1979), 181 Ind.App. 356, 391 N.E.2d 864; *Burkhart v. Wells Electronics Corp.* (1966), 139 Ind. App. 658, 215 N.E.2d 879 (assault and battery). We find no intimation of such result in our statutes and note there is substantial authority which would not allow employers to shield themselves from ordinary liability for their willful and wanton misconduct by denying an employee any remedy other than the limited recovery prescribed by workers' compensation. *See Handley v. Unarco Industries, Inc.* (1984), 124 Ill.App.3d 56, 463 N.E.2d 1011; *Blankenship v. Cincinnati Milacron Chemicals, Inc.,* 69 Ohio St.2d 608, 433 N.E.2d 572, *cert. denied* (1982), 459 U.S. 857, 103 S.Ct. 127, 74 L.Ed.2d 110; *Mandolidis v. Elkins Industries, Inc.* (1978), 161 W.Va. 695, 246 S.E.2d 907. These authorities do not see such behavior as being a normal hazard of employment which workers' compensation laws were designed to ameliorate. We observe workers' compensation acts are legislatively im-

posed social compacts between employers and employees in order to disperse the responsibility for the costs of normal hazards of the workplace. Marketplace economics and competition might be better suited to govern employers' misconduct through increased costs of common law liability than is workers' compensation. Such result might better fit within the public policy behind workers' compensation laws and in our policy to liberally construe those laws in favor of the employee in order to effectuate their humane purposes. *See, e.g., Talas v. Correct Piping Co.* (1982), Ind., 435 N.E.2d 22.

In speaking of such willful or wanton misconduct, we do not mean to include intentional or reckless acts of third parties which are still viewed as incurring injuries by accident from the standpoint of both the employer and the employee and are therefore covered by workers' compensation. Indeed, a recent case from this court indicates an employee may independently bring a common law action against a co-employee engaging in horseplay. *See Martin v. Powell,* 477 N.E.2d 943 (1985). *See, e.g., Skinner v. Martin* (1983), Ind.App., 455 N.E.2d 1168. And intentional acts of an employee which turn out to be the proximate cause of an *accidental* injury are, of course, outside the ambit of misconduct. *See, e.g., Ellis v. Hubbell Metals, Inc.* (1977), 174 Ind.App. 86, 366 N.E.2d 207.

out of and in the course of employment" is an integral part of the rule.

Here, the Industrial Board has exclusive jurisdiction because the case involves the death by accident of an employee which arose out of and in the course of his employment.

For those reasons, I concur in result.